Abraham Bates (12440)
**WASATCH ADVOCATES LLC**
4525 Wasatch Blvd. Ste 300
Salt Lake City, Utah 84124
Telephone: (801) 662-0077
Facsimile: (801) 662-0082
abe@slclawfirm.com

Attorney for Plaintiff.

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD W. HARRIS,<br><br>      Plaintiff,<br><br>   vs.<br><br>LEHMAN BROTHERS BANK; MORTGAGE ELECTRONIC REGISTRATION SYSTEM; ITS TITLE INSURANCE SERVICES LLC; AURORA LOAN SERVICES, LLC; JAMES H. WOODALL; KEYBANK NATIONAL ASSOCIATION; FIRST AMERICAN TITLE INSURANCE; & DOEs 1-5,<br><br>   Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS**<br><br>**HEARING REQUESTED**<br><br><br>Case No. 2:10cv00690<br><br><br>Judge: Waddoups |

Plaintiff Richard W. Harris ("Harris") respectfully the following Memorandum of Points and Authorities in Opposition to Defendant James. H. Woodall's ("Woodall") Motion to Dismiss the Complaint filed by Plaintiff.

## STATEMENT OF FACTS

1.      Harris executed a promissory note (the "Note") with Lehman Brothers Bank

("Lehman") on April 3, 2007.  As security for the Note, Harris granted Lehman a deed of

trust ("Trust Deed"), which was recorded against the Property on April 5, 2007.  *See* Deed

of Trust, attached as Exhibit 2 to Plaintiff's Complaint.

2.       The Trust Deed named Lehman as the "Lender," but recited that:

> "**MERS**" is the Mortgage Electronic Registration Systems, Inc.  MERS is a separate
> corporation that is acting solely as nominee for Lender and Lender's successors and
> assigns.  **MERS is the beneficiary under this security instrument.**(emphasis
> original).  *See* Trust Deed, at ¶ (E).

3.      The Trust Deed also declares, under the heading "TRANSFERS OF RIGHTS IN THE

PROPERTY":

> The beneficiary of this Security Instrument is MERS (solely as nominee for Lender
> and Lender's successors and assigns) and the successors and assigns of MERS. *See*
> Trust Deed, at ¶ (R).

4.      The Trust Deed also recites that:

> Borrower understands and agrees that MERS holds only legal title to the interests
> granted by Borrower in this Security Instrument, but, if necessary to comply with
> law or custom, MERS (as nominee for Lender and Lender's successors and assigns)
> has the right: to exercise any or all of those interests, including, but not limited to,
> the right to foreclose and sell the Property; and to take any action required of
> Lender including, but not limited to, releasing and cancelling this Security
> Instrument.*See* Trust Deed, at ¶ (R).

5.      The Trust Deed further recites that:

> **Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee
> and appoint a successor trustee to any Trustee appointed hereunder.*See* Trust Deed,
> at ¶ 24.

6.      In September of 2008, Lehman filed for bankruptcy because of liabilities for its sub-

prime lending, making it the largest failure of an investment bank in history.  *See* "Lehman Brothers completes third sale of assets," attached as Exhibit 1.  Upon information and belief, therefore, Harris' Note was assigned to Bain Capital and/or Hellman & Frieman as of September 2008.

7.      On August 18, 2009, Woodall recorded a substitution of trustee ("SOT") on the purported authority of MERS.  *See* Substitution of Trustee, attached as Exhibit 2.  The Substitution was executed in the presence of a notary public by "Susan Smothers, Assistant Secretary of MERS."

8.      Upon information and belief, Susan Smothers is not in fact a bona-fide employee of MERS, but an employee of Defendant Aurora Loan Services ("Aurora") masquerading as a MERS employee.  *See* Plaintiff's Complaint, at ¶¶ 62-93.

9.      The same day, Woodall recorded a notice of default ("NOD"), alleging that purported beneficiary MERS "has executed and delivered to said Trustee a written declaration of default and a demand for sale, and has deposited with said Trustee such deed and all documents evidencing the obligation secured thereby . . . ."  *See* Notice of Default, attached as Exhibit 3.

10.     Woodall sold Harris' home at a trustee sale on April 28, 2010 and recorded a trustee's deed conveying the property to Defendant Aurora.  *See* Trustee's Deed, attached as Exhibit 4.  Upon information and belief, Aurora is the purported note-holder by assignment who instructed Woodall to sell the property, although the chain-of-title

discloses no assignment or conveyance to Aurora at any prior point in time.

11.     While Woodall claims in the NOD that MERS deposited with him "all documents evidencing the obligation secured thereby," Harris claims that Woodall did not in fact possess any documents, delivered by MERS, proving the obligation and default on the Note. See Plaintiff's Complaint, at ¶¶ 7-20.

12.     While MERS arguably had the authority to make a subsitution of trustee while Lehman still held the Note pursuant to its "nominee"authority under the Trust Deed, Harris claims that authority was terminated when the Note was sold (in September 2008), despite the Trust Deed's purported claim that MERS is the nominee for whoever owns the mortgage by assignment regardless of the identity of the holder.  *See* Plaintiff's Complaint, at ¶ 32.

## PLAINTIFF'S STIPULATIONS TO FACTS AND LAW

13.     Harris stipulates that MERS, while Lehman still held the Note, had limited agency powers to act at Lehman's request (as nominee).  Plaintiff denies the MERS held legal title, was the owner of the beneficial interest in the mortgage, or otherwise had equivalent authority of the lender, despite any language in the Trust Deed to the contrary.

14.     Harris stipulates that, if the Trust Deed is a nullity as alleged in his Complaint, Lehman, or its successor by a valid endorsement of the Note, holds an equitable mortgage creating a security interest in the property.

15.     Harris stipulates that his claim for equitable relief is not a claim against Woodall to

the extent that Harris acknowledges a trustee has no power to reform his Note.  However,

Harris claims that Woodall is complicit in the destruction of the notice system of public

records for real property perpetrated by MERS and its members.

16.      Harris stipulates to Woodall's presentation of the standard of review for 12(b)(6)

motions to dismiss.

ARGUMENT[1]

**I.      Harris has stated a claim for (1) declaratory judgment that Woodall lacked authority to record the NOD and sell the property; (2) violations of the FDCPA when post-default collection activities fall within the purview of the statute and the Complaint meets pleading requirements; and (3) quieting title by nullifying the Lehman trust deed when Lehman no longer holds any interest in the Note, the Property or the Trust Deed and there is no recorded assignment or conveyance of the mortgage.**

> **A.  Harris has properly stated claims for declaratory judgment and quiet title.**

MERS is not the beneficiary of Harris' Trust Deed, despite the language of

paragraphs (E) and (R).  According to Utah law, the "beneficiary" of a trust deed "means the

person named or otherwise designated in a trust deed as the person for whose benefit a

trust deed is given, or his successor in interest."  U.C.A. 57-1-19(1) (1988).  Additionally,

only the beneficiary may substitute the trustee to a mortgage: "[t]he beneficiary may

appoint a successor trustee at any time by filing for record in the office of the county

recorder of each county in which the trust property . . . is situated, a substitution of

---

[1] The arguments in this Memorandum, like the arguments in the Complaint, borrow heavily, and often directly, from University of Utah Associate Dean Christopher Peterson's law review article entitled *Foreclosure, Subprime Mortgage Lending, and The Mortgage Electronic Registration System*, available at http://ssrn.com/abstract=1469749, scheduled for publication Spring 2011.

trustee."  U.C.A. § 57-1-22 (2002).  Additionally, the substitution of trustee must "be executed and acknowledged by all of the beneficiaries under the trust deed or their successors in interest."  *Id.*

MERS maintains that it is the "mortgagee of record," or, in this case, "the beneficiary" under the trust deed even though its ownership of the mortgage is purely fictional.  According to Black's Law Dictionary, a "mortgagee" is "[o]ne to whom property is mortgaged; the mortgage creditor, or lender.  – Also termed *mortgage-holder*."[2]  MERS is never entitled to receive the borrower's monthly payments, nor is it entitled to receive the proceeds of a foreclosure or deed of trust sale.  MERS has no actual financial interest in any mortgage loan.  MERS does not, and cannot, provide lien releases of the mortgages it purports to own.  Because MERS does not actually advance any loan principal to the homeowner and because it does not have the right to receive any payments from the borrower, MERS is not the actual party in interest in any foreclosure proceeding.

In order to move foreclosures along as quickly as possible, MERS allows actual mortgagees and loan assignees or their servicers to bring foreclosure actions in MERS' name, rather than their own.  Once a loan is assigned to MERS, public records can no longer reveal who (or what) actually owns a lien on property.  This is perfectly illustrated in the present case, where the original lender (Lehman) went bankrupt because of sub-prime lending and sold its loan portfolio in bankruptcy to other parties.  Harris is supposed to take for granted that MERS and Woodall are acting on actual authority of the present note-

---

[2] BLACK'S LAW DICTIONARY (8th ed. 2004), mortgagee.

holder, even though public records for real property in Salt Lake County still indicate that

Lehman is the note-holder, an impossibility because of Lehman's bankruptcy sale.

Woodall's NOD fails to identify the creditor or note-holder whose authority he is

purportedly acting upon.  The NOD declares that MERS is the lender (holds the beneficial

interest), suggesting that Harris should contact MERS if he would like to cure his default or

negotiate a loan modification.  But MERS has no authority to receive payment or to modify

the Note.

   The roles and rights of various players in a lending transaction—such as the

borrower, the lender, and the trustee of the deed of trust—have been well settled. One of

these settled principles is that the beneficiary of the deed of trust is the party to whom the

debt is owed.  *See Hellman v. Capurro*, 549 P.2d 750, 751 (Nev. 1976) ("A mortgagee or a

beneficiary to a deed to trust is entitled to only one satisfaction of *his debt*." (emphasis

added)); *see also Monterey S.P. P'ship v. W.L. Bangham, Inc.*, 777 P.2d 623, 627 (Cal. 1989)

("[A] deed of trust typically secures a debt owed the beneficiary . . . .").  MERS' membership

rules clearly state that members are never permitted to claim MERS is a "note-owner" as

part of foreclosure proceedings.[3]  On September 25, 2009, R.K. Arnold, the President and

CEO of MERSCORP, Inc. – the parent of MERS - was deposed in Alabama.  In his deposition,

Arnold admitted that MERS does not have a beneficial interest in any mortgage; that it does

---

[3]MERS Rules of Membership, Rule 8, Section 2(a)(i), 2(c) (Appx. 469-70).

not loan money; and that it does not suffer a default if a borrower fails to repay a mortgage loan.[4]

The "nominee/beneficiary" language in Harris' Trust Deed describing MERS is schizophrenic and mutually exclusive: a "nominee" is an agent for the mortgagee, while the "beneficiary" is the mortgagee itself.  MERS' description of itself is false on its face, because the same entity cannot simultaneously be both "solely" an agent *and* a principal with respect to the same property right.[5]  The reason for MERS' schizophrenic description is straightforward: when MERS is challenged in litigation related to its standing to foreclose, MERS takes the position, as its corporate counsel explains, that it "gets its authority to assign and/or discharge a mortgage because MERS is the mortgagee, and as such holds legal title to the mortgage."[6]  When MERS is challenged in litigation based on fraud, deceptive practices, or other statutory consumer protection claims associated with loans registered in its system, MERS argues it is merely an agent ("nominee") without any exposure to liability.[7]

---

[4]*See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009)  available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

[5]See Restatement (Third) of Agency Law § 1.01 ("Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control. . . ."). Moreover, neither the popularity of MERS' self-characterization, nor its contractual recitation, are controlling. *Id*. § 1.02 ("An agency relationship arises only when the elements stated in § 1.01 are present. Whether a relationship is characterized as agency in an agreement between the parties or in the context of industry or popular usage is not controlling.").

[6] MERS Forum, FAQ with Sharon Horstkamp, MERS Vice President and Corporate Counsel, www.mersinc.org/forum/viewreplies.aspx?id=13&tid=73 last viewed June 9, 2004.

[7]*Compare* Landmark Nat. Bank v. Kesler, No. 98,489, 2008 WL 4180346, at *1-*2 (Kan. Ct. App., Sept. 12 ,2008) ("What is MERS's interest? MERS claims that it holds the title to the second mortgage . . . . MERS objects to its

The language of the Trust Deed does not determine the respective roles of the parties to the transaction.  Mortgage contracts are construed based on the economic realities of the transaction, and not upon the language the parties use to describe the bargain.[8]  The economic reality of a mortgage transaction clearly indicates that MERS is not a mortgagee or an assignee.  There are three fundamental economic reasons why MERS is not the mortgagee: (1) MERS does not fund any loans; (2) homeowners do not promise to pay MERS any money; and (3) MERS is never entitled to receive the proceeds of a foreclosure sale.  These funds go to the *actual mortgagee* (or assignee) that is the true owner of the lien.

MERS' claim that it owns legal title to mortgages by virtue of assignment is also false on its face because MERS does not pay the mortgage originator value in exchange for the

---

characterization as an agent…") *with In re* Escher, 369 B.R. 862 (E.D. Pa. 2007) ("MERS' role as nominee leads the Court to conclude that it cannot be liable on any of the Plaintiff's [Truth in Lending or Pennsylvania consumer protection] claims. A nominee is understood to be an agent for another. . . . Therefore MERS will be dismissed from this action and no further reference to MERS will be made." ); Hartman v. Deutsche Bank Nat. Trust Co., No. 07-5407, 2008 WL 2996515, *2 (E.D.Pa. Aug. 1, 2008) (accepting MERS' argument that it could not be liable under the Truth in Lending Act because there was no colorable allegation "that … [the plaintiff's] mortgage loan was assigned to MERS, or that MERS was ever the owner of that obligation."); Brief in Support of Defendant's Motion to Dismiss at 3, King v. Ocwen, Civil Action No. 07-11359, 2008 WL 2063553 (E.D.Mich, April 14, 2008) (arguing that MERS could not be liable for Fair Debt Collection Practices Act violations because "*HSBC was the mortgagee* for the property. Ocwen is the servicer for the property. [And,] MERS acted solely as the nominee for the original mortgagee of the property") (emphasis added).

[8]Ja-Mo Associates, Inc. v. 56 Fulton St. Garage Corp. 30 A.D.2d 287, 290 (N.Y. A.D. 1968) ("While the court is not bound by the label which the parties applied to the payment and may examine the true nature of the transaction, the payment here bore none of the distinguishing characteristics which would render section 233 (of the Real Property Law . . . ) applicable. There was no intention that the landlord hold the money as security.") (citations omitted); Szabo Food Service, Inc. of North Carolina v. Balentines, Inc., 206 S.E.2d 242, 249 (N.C. 1974); ("It has long been the rule with us that in determining whether a contract is one of bailment for use, a lease with an option to purchase, or one of sale with an attempt to retain a lien for the purchase price, the courts 'do not consider what description the parties have given to it, but what is its essential character.") (citation omitted); Lee v. Barnes, 362 P.2d 237, 240 (Wash. 1961) ("The label affixed to a security interest by the parties does not necessarily determine its legal significance.")

9

mortgage.  On the contrary, the originator or servicer pays MERS to take the "assignment."

Under this "assignment," MERS is still not entitled to receive repayment of the mortgage

loan, nor is it entitled to the proceeds of a foreclosure sale."  The fee MERS is paid is to

provide recordkeeping and foreclosure services, not to own a lien on a family residence.

"Transfers in trust of real property may be made to secure the performance of an obligation

of the trustor or any other person named in the trust deed *to a beneficiary*." U.C.A. § 57-1-

20 (2001) (emphasis added).  MERS is not a beneficiary of any mortgage instrument, and is

therefore not the transferee of any trust of real property.

　　　　Federal consumer protection and bankruptcy law also show that MERS does not

own legal title to loans registered in its database.  Under the Truth in Lending Act ("TILA")

and the Home Ownership and Equity Protection Act ("HOEPA"), a mortgage assignee can be

liable for an original lender's violations of those statutes.  If MERS owns legal title to the

mortgages in its database, it would have taken on liability for tens of millions of residential

mortgages, liability the company has repeatedly disclaimed.

　　　　MERS' claim that it owns legal title to mortgages is further undermined by the long-

standing rule that a mortgage follows a negotiated promissory note.[9]  Courts are virtually

unanimous in holding that, where a mortgage lender with a promissory note negotiates

that note to a holder, the holder of the promissory note also obtains any mortgage securing

---

[9] RESTATMENT (THIRD) OF PROPERTY:MORTGAGES§5.4 (a), cmt. B (1997); NELSON &WHITMAN, *supra* note X, at §5.27; GEORGE E. OSBORNE, HANDBOOK ON THE LAW OF MORTGAGES § 223 (1970).

that note.[10]  According to Harris' Trust Deed, MERS holds the beneficial interest in the mortgage even when a non-MERS member purchases his Note ("[t]he beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. ").  This is in direct violation of well-settled property and agency law.

The records of the Salt Lake County recorder show no assignment or conveyance of Harris' mortgage.  Courts in New York have confirmed that "foreclosure of a mortgage may not be brought by one who has no title to it . . . ." *Kluge v. Kugazy*, 145 A.D.2d 537, 538, 536 N.Y.S.2d 92 (1988). The New York Appellate Division, Third Department recently ruled that an assignee of a mortgage does not have a right or standing to foreclose a mortgage unless the assignment is complete at the time of commencing the action. *Lasalle Bank Nat. Ass'n v. Ahearn*, 59 A.D.3d 911, 875, 912, N.Y.S.2d 595, 597 (2009).  Thus even if MERS, or the true holder of Harris' note, were to record the assignment today, a new and proper SOT and NOD would have to be recorded, on the authority of the actual note-holder – not MERS and not Lehman, a bankrupt institution with no claim to the mortgage as of September 2008.

---

[10] In re Ivy Properties, Inc., 109 B.R. 10, 14 (Bkrtcy.D.Mass.,1989) (under Massachusetts common law the assignment of a debt carries with it the underlying mortgage); Margiewicz v. Terco Properties of Miami Beach, Inc., 441 So.2d 1124, 1125 (Fla.Dist. Ct. App.1983) (When a note secured by a mortgage is assigned, the mortgage follows the note into the hands of the assignee); Rodney v. Arizona Bank, 836 P.2d 434, 436 (Ariz. Ct. App.1992); Brewer v. Atkeison, 25 So. 992, 993 (Ala. 1899) ("[A]n assignment by the mortgagee of one of the mortgage notes operates as an assignment pro tanto of the lien upon the lands."); Martindale v. Burch, 10 N.W. 670, 671 (Iowa 1881) ("That an assignment or transfer of a note, secured by a mortgage, operates as an assignment of the mortgage lien, is a settled rule of law."); Robinson Female Seminary v. Campbell, 55 P. 276. 277 (Kan. 1898) ("the assignment of the note operated as an assignment of the mortgage made to secure the note."); Page v. Pierce, 26 N.H. 371, 1853 WL 2428, at *4 (1853) ("It is settled in this State, that the assignment of a debt secured by a mortgage of land, is *ipso facto* an assignment of the security also.").

In a widely cited decision, the U.S. Supreme Court held that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274 (1872), attached as Exhibit 5.  As *Carpenter* mandates, MERS' claims under the deed of trust are a nullity as the original lender no longer has an interest in the Trust Deed; therefore, MERS has no remaining interest as nominee.  Furthermore, MERS cannot possibly be the nominee of "Lender's successor and assigns" unless it can show a separate agency contract with the successor or assignee.  "If [the original lender] has transferred the note, MERS is no longer an authorized agent of the holder unless it has a separate agency contract with the new undisclosed principal."  *In re Vargas*, 396 B.R. 511, 517 (Bankr.C.D. Cal. 2008), attached as Exhibit 6.

No state recording statute, including Utah's, authorizes mortgagees or their assignees to vicariously record using the name of an agent or nominee.  *See* U.C.A 17-21 *et seq*.; *see also* U.C.A. 57-1-20 (2001).  Utah's Recording Act also specifies that the name of the mortgagee or assignee must be included so that records and indexes can be drawn up from the names of both parties.  U.C.A 17-21 *et seq*.  While the record does not disclose whether Harris' Note was securitized, Lehman was one of the pioneers of the securitization of sub-prime loans into mortgage-backed securities ("MBSs") and collateralized-debt obligations ("CDOs").  But Harris' claim does not depend at all on whether his Note has been securitized.  Because the current note-holder has violated Titles 17 and 57 of the Utah

Code, Harris cannot determine to whom he should have made payments to cure his default, whether the Note is securitized or not.

MERS is not the owner of Harris' mortgage by assignment from Lehman.  The parties to mortgage securitizations and loan originators who "assign" a mortgage to MERS do not negotiate the promissory notes to MERS.  MERS does not pay value for the notes and is not entitled to receive payment.  Also, negotiating a note to MERS would expose it to assignee liability under numerous federal consumer protection laws.

In thousands of cases across the country, including the present case, MERS claims that it owns legal title to the mortgage and therefore is entitled to foreclose.   However, an economic analysis of the claim that MERS owns the lien is demonstrably false when MERS does not own the proceeds of the sale generated from exercising the lien.

Even if this Court accepts MERS' suspect claim that it owns legal title to a mortgage, nominal ownership do permit MERS to behave as if it is the mortgagee:

> Prior to the introduction of MERS to the mortgage markets, in the history of the Anglo-American common law, there has been no case that holds that a debt collection plaintiff that lacks any beneficial interest in the debt has standing to sue *even* where legal title to that debt is held by a trustee.  Nor has there ever been a case that holds there are *two* separate legal titles to the same property. . . .  To grant MERS standing based on legal title held by someone else [the trustee of the security, or the actual lender/mortgagee], is to treat the notion of legal title as some magical nonsense where ownership means nothing other than a willingness on the part of the courts to let financiers seize homes however is most convenient for them.[11]

---

[11] Peterson,  *Foreclosure, Subprime Mortgage Lending, and The Mortgage Electronic Registration System*, available at http://ssrn.com/abstract=1469749; *see also* Sprint Communications Co., L.P. v. APCC Services, Inc., 128 S.Ct. 2531, 2535 (2008).

Currently, there is a growing split in authority on whether MERS, and its appointed agents like Woodall, have standing to bring foreclosure actions against homeowners. Woodall misleads the Court in his brief when he claims that "there is no legal authority to support [Harris'] claims for relief."  Defendant's Memorandum, at p. 2.  Courts that look beyond the formal labels affixed to MERS by the parties have been reluctant to grant standing,[12] while the courts granting standing have often written conclusory opinions that refuse to look beyond MERS' nominal claims of ownership.[13]

In 2009, the Arkansas Supreme Court held that "MERS is not the beneficiary, even though it is so designated in the deed of trust. Pulaski Mortgage, as the lender on the deed of trust, was the beneficiary. It receives the payments on the debt." *Mortgage Elec. Registration Sys., Inc. v. S.W. Homes of Ark.*, 301 S.W.3d 1, at 4-5 (Ark. 2009), attached as Exhibit 7.  In 2009, the Kansas Supreme Court, based on a comprehensive analysis of the trust deed and the concepts of "nominee", "beneficiary" and "mortgagee", also rejected the notion that MERS is a real party in interest to a foreclosure action.  *See Landmark v. Kesler*, 216 P.3d 158, 168 (2009), attached as Exhibit 8.  In 2009, the Missouri Court of Appeals

---

[12]*See LaSalle Bank NA v. Lamy*, 12 Misc.3d 1191, 824 N.Y.S.2d 796, at *2 (2006) ("[T]his court and others have repeatedly held that a nominee of the owner of the note and mortgage, such as Mortgage Electronic Registration Systems, Inc. MERS), may not prosecute a mortgage foreclosure action in its own name as nominee for the original lender because it lacks ownership of the note and mortgage at the time of the prosecution of the action.") (unreported disposition) *with In re Sheridan*, No. 08-20381-TLM, 2009 WL 631355 (Bkcrtcy.D.Idaho March 12, 2009) (In homeowner's bankrtupcy, MERS lacked standing to file a motion for relief from the automatic stay that would facilitate foreclosure under state law).

[13]*See, e.g., In re Sina*, 2006 WL 2729544 (Minn.App. 2006) ("Although the record shows that ALS serviced the mortgage, the assignment of the mortgage was recorded in MERS's name. And by agreement, MERS retained the power to foreclose the mortgage in its name. Because MERS is the record assignee of the mortgage, we conclude that MERS has standing to foreclose the property by advertisement.").

found that MERS could not foreclose when "[t]he practical effect of splitting the deed of

trust from the promissory note is to make it impossible for the holder of the note to

foreclose, unless of the holder of the deed of trust is the agent of the holder of the note . . . .

The mortgage loan becomes ineffectual when the note holder did not also hold the deed of

trust." *See Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo.App.2009),

attached as Exhibit 9.  The Nebraska Supreme Court has "conclude[d] that MERS does not

acquire mortgage loans" because "simply stated, MERS has no independent right to collect

on any debt because MERS itself has not extended credit, and none of the mortgage debtors

owe MERS any money." *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*,

704 N.W.2d 784, 788 (Neb. 2005), attached as Exhibit 10. This conclusion relied upon

MERS's arguments to that court that it "only holds legal title to members' mortgages in a

nominee capacity and is *contractually prohibited from exercising any rights with respect to*

*the mortgages (i.e., foreclosure) without the authorization of the members*.  Further, MERS

argues that it does not own the promissory notes secured by the mortgages and has no

right to the payments made on the notes." *Id.* at 787 (emphasis added).

Additionally, numerous bankruptcy courts have also found that, because MERS

never holds the promissory note, its assignment of the deed of trust has no force. *See In re*

*Wilhelm,* 407 B.R. 392 (Bankr.D.Idaho 2009) (standard mortgage note language does not

expressly or implicitly authorize MERS to transfer the note), attached as Exhibit 11; *In re*

*Vargas,* 396 B.R. 511, 517 (Bankr.C.D.Cal.2008) ("[I]f FHM has transferred the note, MERS is

no longer an authorized agent of the holder unless it has a separate agency contract with

the new undisclosed principal.  MERS presents no evidence as to who owns the note, or of

any authorization to act on behalf of the present owner."), attached as Exhibit 6;  *Saxon*

*Mortgage Services, Inc. v. Hillery,* 2008 WL 5170180 (N.D.Cal.2008) (unpublished opinion)

("[F]or there to be a valid assignment, there must be more than just assignment of the deed

alone; the note must also be assigned . . . MERS purportedly assigned both the deed of trust

and the promissory note . . . . However, there is no evidence of record that establishes that

MERS either held the promissory note or was given the authority . . . to assign the note."),

attached as Exhibit 12;  *In re Walker*, Case No. 10-21656-E-11 (E.D.Cal.2010) (unpublished

opinion) ("to perfect the transfer of mortgage paper as collateral the owner should

physically deliver the note to the transferee.  Without physical transfer, the sale of the note

could be invalid as a fraudulent conveyance, or as unperfected . . . .  MERS is not the owner

of the underlying note and therefore could not transfer the note, the beneficial interest in

the deed of trust, or foreclose upon the property secured by the deed."), attached as Exhibit

13.

The United States Court of Appeals for the Seventh Circuit has described MERS's

complete lack of substantive involvement in the lending transaction:

> MERS is not the lender. It is a membership organization that records, trades, and
> forecloses loans on behalf of many lenders, acting for their accounts rather than its
> own . . . .  Each lender appears to be entitled not only to payment as the note's
> equitable (and legal) owner but also to control any litigation and settlement.

*Mortgage Elec. Registration Sys., Inc. v. Estrella*, 390 F.3d 522, 524-25 (7th Cir. 2004),

attached as Exhibit 14.

A federal district court in Ohio dismissed 27 foreclosure cases when the lenders

could not prove they were the holder and owner of the Notes and Mortgages.  *In re*

*Foreclosure Cases*, Case No. 1:07-cv-02282-CAB (N.D.Ohio.2007) (unpublished opinion),

attached as Exhibit 15.  As in the present case, the foreclosing parties claimed they were the

holder of the note and the mortgage, even though the note and mortgage identified another

lender as the original mortgagee.  Additionally, the foreclosing party was not referenced in

the recorded chain of title, also like the present case.  Additionally, Ohio law, like Utah law,

makes mortgage assignments subject to recording.  *See* U.C.A 17-21 *et seq*.; *see also* U.C.A.

57-1-20.  The court held that, "[n]either the fluidity of the secondary mortgage market, nor

monetary or economic considerations of the parties, nor the convenience of the litigants

supersede those obligations [to prove possession of the endorsed notes]."  *In re Foreclosure*

*Cases*, at p. 5.

Woodall's reliance on the recent unpublished federal trial court decisions in *Burnett*

and *Rodeback* is unpersuasive.  *See Rodeback v. Utah Financial, et al.*, Case No. 1:09-cv-

00134-TC (N.D.Utah.2010) and *Burnett v. Mortgage Electronic Registration Sys., Inc.*, Case

No. 1:09-cv-00069-DAK (N.D.Utah.2009), attached to Defendant's Memorandum.  In

*Burnett*, the primary focus of Judge Kimball's analysis focused on Burnett's failure to

properly plead her FDCPA claims.  In the context of evaluating whether Woodall had the

right of possession to plaintiff's property and therefore had the right to demand payment of

the debt, the court simply recited the language of the trust deed (language identical to

Harris') and concluded, without any analysis, that he had authority.  *Burnett* is further

distinguishable because Woodall was acting on the authority of MERS as nominee for the

original lender.  In the present case, Woodall is not acting on MERS' authority as nominee

from the original lender, as Lehman is bankrupt and sold all of its assets long before

Woodall was substituted as trustee by MERS.

Judge Campbell's decision in *Rodeback*, decided earlier this month, is even less

persuasive.  Like *Burnett*, where the primary issue was the pleading requirements of the

FDCPA, the primary issue in *Rodeback* was whether the defendants violated RESPA by

failing to respond to a qualified written request. *Rodeback* is once again distinguishable

because it was not determined that MERS was acting on the authority of a note-holder by

assignment, as it is in this case.  In the concluding paragraph of the opinion, the court

summarily concluded, without any analysis, that MERS had authority to foreclose based on

the language in the trust deed, which, once again, is identical to Harris'.

Harris does not dispute that the Trust Deed purports to grant MERS the beneficial

interest in his mortgage, and the consequent rights of assignment, payment, discharge, and

substitution of trustee.  Harris simply points out that, as more fully developed *supra*, the

language of a trust deed does not determine the respective roles of the parties to the

transaction, in the face of compelling evidence and analysis that clearly indicates that MERS is not, in fact, the mortgagee or the holder of the beneficial interest *to any mortgage*.

    *Rodeback* and *Burnett* are precisely the types of examples that Dean Peterson refers to in his evaluation of the split in authority nationwide concerning MERS' (and therefore Woodall's) authority to foreclose.[14]  There is no decision in MERS favor, from any court, that has ruled that MERS is the mortgagee based on an in-depth analysis of the economic behavior of the parties.  The decisions in MERS' favor do nothing more than recite the language of the trust deed.  To permit a party to selfishly define its role in a mortgage transaction, regardless of economic realities of the transaction, contravenes well-established principles of contract, property, and agency law.  To permit MERS to evade liability for violations of federal lending laws by accepting its claim that it is "solely nominee" for the lender on the one hand, while permitting MERS to prosecute tens of thousands of foreclosures nationwide by accepting its claim that it is the "mortgagee" or holder of the "beneficial interest" of mortgages is an affront to public policy and consumer's ability to protect themselves against the overreaching of the predatory lenders who invented MERS: "MERS represents the mortgage industry's best efforts to create a single, national foreclosure plaintiff that always has foreclosure standing, but never has foreclosure liability."[15]

---

[14] *See Peterson, supra.*
[15] *Id.*

MERS does not make mortgage loans.  MERS does not take payment on mortgage loans.  No homeowner every promises to pay MERS any money.  MERS does not receive the proceeds of any foreclosure sale.  MERS is not liable for the fraud or deceptive practices of the lender.  MERS is not the beneficiary of any mortgage note or security instrument.  Therefore, MERS is not a real party in interest to any mortgage transaction and lacks any authority to assign or release a mortgage or to substitute a trustee.

In summary, Harris has stated a claim for relief for declaratory judgment that Woodall's substitution as trustee and subsequent notice of default were unlawful when only the note-holder can perform a substitution of trustee and there is no evidence that MERS was the note-holder (or nominee of the note-holder) as of August 18, 2009.  MERS cannot possibly be the nominee of "[l]ender's successors and assigns" in perpetuity without a subsequent agency contract with the successor or assignee.  The record discloses that Lehman, because it sold all of its assets in bankruptcy in Sept. 2008, no longer has any interest in the Note, the Trust Deed, or Harris' property.  Because there is no assignment or conveyance of the Trust Deed or the Note in the chain of title, the trust deed is a nullity.  The true-holder of the Note is entitled to an equitable mortgage and can record a deed of trust at any time.  But no such interest has been recorded to date.

Therefore, Plaintiff moves the Court to deny Defendant's Motion to Dismiss when Plaintiff has clearly stated a claim upon which relief can be granted.

**B.  Harris has properly stated, and pleaded, his claim for violations of the FDCPA.**

20

The federal Fair Debt Collection Practices Act ("FDCPA") forbids false or misleading representations and unfair collection tactics, including threats to foreclose when not legally entitled to do so.  15 U.S.C. §§ 1692d-1692f.  The FDCPA requires that debt collectors give consumers written validation and verification of a debt as well as the identity of the creditor in order to prevent collection of debts or fees not actually owed.  15 U.S.C. § 1692g(a).  The FDCPA grants a private right of action allowing consumers to sue for statutory punitive damages, costs and attorney's fees.  15 U.S.C. § 1692k(1).  The FDCPA must be construed broadly in favor of debtors, analyzed from the perspective of the "least sophisticated debtor."[16]

MERS, and its appointed foreclosure attorneys, are third-party debt collector subject to the FDCPA when they regularly collect, or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due to another.  Woodall is one of about a half-dozen Utah attorneys who collectively institute the bulk of the thousands of non-judicial foreclosures that occur every year in Utah.  If the Court is not satisfied that the Complaint properly pleaded the "regularity" contention as to Woodall (despite its references to the frequency of the foreclosure activities of MERS and its appointed trustees (Plaintiff's Complaint, at ¶ 86)), Harris asks leave of the Court to do so by amendment.

---

[16]*See, e.g.,* Brown v. Card Service Center. 464 F.3d 450, 453 ("Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose. Accordingly, . . . we have held that certain communications from lenders to debtors should be analyzed from the perspective of the "least sophisticated debtor.").

By instituting foreclosure proceedings, MERS and its appointed foreclosure attorneys are "attempt[ing] to collect, [either] directly or indirectly, debts" within the meaning of the statute.[17]  The overwhelming majority of state and federal courts have concluded that bringing a foreclosure action is a debt collection activity governed by the Act.[18]

Moreover, whatever the mortgage closing documents say, because MERS, and its appointed foreclosure attorneys like Woodall, remit all proceeds of their collection activities to the actual owner of the loan, Woodall is clearly collecting a debt that is owed to another business entity.  MERS and Woodall are not creditors exempted under the statute when they do not "offer or extend credit" on any mortgage loan.  *See* 15 U.S.C. § 1692a(4).

The FDCPA contains an exemption specifically designed for mortgage servicers.  *See* 15 U.S.C. § 1692a(6)(F).[19]  However, this exemption does not apply to MERS or Woodall for two reasons: (1) MERS and trustees are not mortgage loan servicers when they do not service the debt by collecting payments due; (2) the legislative history and policy rationale

---

[17] 15 U.S.C. § 1692a(6). The Supreme Court has held that collection lawsuits are debt collection within the FDCPA. *Hientz v. Jenkins*, 514 U.S. 291, 294 (1995).

[18] *Wilson v. Draper & Goldberg*, 443 F.3d 373 (4th Cir. 2006); *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006); *Shapiro &Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992); *Galusk v. Blumenthal*, 1994 WL 323121 (N.D.Ill. June 26, 1994). *Cf Bergs v. Hoover, Bax, &Slovacek, LL.P.*, 2003 WL 22255679 (N.D. Tex. Sept. 24, 2003).

[19] *Dawson v. Dovenmuehle Mortgage inc.*, No. 00-6171, 2002 WL 501499, at *5 ("A loan servicer, someone who services but does not own the debt, is not a 'debt collector' if the servicer begins servicing of the loan before default…."). S. Rep. No. 95-382, at 3 (1977) ( X- quote ). The Federal Trade Commission's Staff Commentary also reflects this policy by explaining that: "The exception (iii) for debts not in default when obtained applies to parties such as mortgage service companies whose business is servicing current accounts."). 53 Fed. Reg. 500097, 50103 (Dec. 13, 1988).  Senate Report No. 95-382, at 3-4(1977) ("[T]he committee does not intend the definition [of debt collector] to cover the activities of . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default *when taken for servicing*.") (emphasis added)

behind the exemption indicates MERS and its appointed foreclosure attorneys do not qualify. Congress exempted original creditors and loan servicers (prior to default) from the FDCPA because it felt that market forces would penalize creditors who perpetrated overbearing or harassing debt collection practices when consumers could shift their future credit purchases elsewhere; third-party debt collectors, on the other hand, are not chosen by the consumer, and therefore are not vulnerable to a market-base remedy. Likewise, homeowners never choose to interact with MERS, or foreclosure attorneys like Woodall. Additionally, MERS' and Woodall's collection activities are focused exclusively and completely on collecting loans on the eve of foreclosure. Therefore, because there is no market-based remedy to penalize MERS or Woodall for unfair or deceptive debt collection practices and because their collection activities are post-default, they should be considered third-party debt collectors.

The FDCPA will be gutted if entities like MERS and its appointed foreclosure attorneys are not considered debt collectors. If courts conclude MERS is entitled to exemption, third-party debt collection mills will inevitably circumvent the statute by instructing doctors, hospitals, landlords, credit card lenders, and others to list MERS, or some other "obligee of record in nominee capacity" in the loan or account origination documents. These "nominees" can then hire attorneys like Woodall, who demand payments from homeowners for hundreds of thousands of dollars with only superficial verification of the alleged debt, who then escape all liability under the FDCPA.

It is for this reason that the FDCPA must be construed broadly in favor of debtors. Mortgage servicers, like Aurora, who cloak themselves in MERS' name, should also be considered debt collectors.  MERS is a relatively small company without the resources to use its own employees to bring the hundreds of thousands of foreclosures in which it is named a party.[20]  MERS solves this problem by telling courts, and anyone else who asks, that the servicer's employee or foreclosure attorney is an employee of MERS, even though MERS does not pay that person a salary or any other compensation.[21]  Under MERS' company policy, thousands of employees of *other* companies and law firms have been named "certifying officers" of MERS.[22]  A servicer's employee or foreclosure attorney can become a "Vice-President" or "Assistant Secretary" of MERS by simply filling out the "Corporate Resolution Request Form" on MERS' web page.[23]  Once a servicer's employee or

---

[20] MERS' web page lists the contact information for only five attorneys and two paralegals. MERS Departments, http://www.mersinc.org/about/departments.aspx?id=2 (viewed Sept. 5, 2009).

[21] Mortgage Electronic Registration System, Inc., MERS Law Seminar for USFN Conference, 15 (April 21, 2002) (document on file with author) ("Question :*Who should be named as a certifying officer?* [Answer:] Anyone that signs 'documents for the Lender currently should be named as a certifying officer. This way, the Lender's procedures will not need to be changed and the same people will continue to execute the documents.").

[22]Question and Answer document produced by MERS for a training conference explains:
   Question: *What is a Certifying Officer?*
   A certifying officer is an employee of the Lender who is appointed a MERS officer by a MERS Corporate Resolution. The Resolution allows the certifying officer to execute documents as a MERS officer.
   Question: *Does the title that the employee holds as an employee of the Lender correspond to the title that the employee holds as a MERS Certifying Officer?*
   No. All MERS Certifying Officers are appointed assistant secretaries and vice presidents of Mortgage Electronic Registration Systems, Inc. That means that if an employee is a Senior Vice President of the Lender, that employee is not a Senior Vice President of MERS. The employee is an assistant secretary and vice president of MERS.
Mortgage Electronic Registration System, Inc., MERS Law Seminar for USFN Conference, 15 (April 21, 2002) (document on file with Dean Peterson).

[23] MERS, Corporate Resolution Request Form, www.mersinc.org/MersProducts/forms/crrf/crrf.aspx (last viewed: April 6, 2009).

foreclosure attorney attains the fictitious "Assistant Secretary" title, she can order as many

MERS corporate seals as she wishes for a fee of $25.

In this case, Woodall claims he was substituted as trustee on the authority of "Susan

Smothers, Assistant Secretary of MERS." *See* Substitution of Trustee.  Susan Smothers is

most likely not a bona-fide employee of MERS, but rather is an employee of Aurora

masquerading as a MERS employee.  This is fundamentally deceptive.  The FDCPA demands

that courts look past the nominal labels debt collectors give themselves and determine who

is actually engaging in what type of economic activity.  Whether Aurora is the servicer or

the purported assignee of Harris' mortgage, it should not be able to pretend to be someone

else in order to start foreclosure proceedings by authorizing Woodall to enter his

appearance.  If Aurora is in fact the assignee of Harris' mortgage, it should have, in

compliance with Utah law, recorded that assignment and then properly substituted in

Woodall pursuant to its own lawful authority under Title 57.  Instead, Aurora hides behind

the mask of MERS to start foreclosure proceedings, confusing and deceiving homeowners

like Harris who don't know where to turn to cure a default or negotiate a forbearance.

Dean Peterson appropriately describes MERS as the "masked executioner."[24]

Susan Smother's MERS masquerade is *per se* deceptive, and Woodall is complicit in

her deception.  Debt collectors who pretend to send letters from an attorney, where an

attorney has not actually reviewed the file in question, have committed a deceptive act

under the statute.  *Clomon v. Jackson*, 988 F.2d 1314 (2d.Cir. 1993).  Similarly, third-party

---

[24] *See Peterson, supra.*

debt collectors cannot exempt themselves from the statute by pretending to be the creditor.  15 U.S.C. § 1692e(11).  And when a creditor pretends to be a third-party debt collector, they lose their exemption under the statute.[25] The thousands of MERS' "Vice-Presidents" and "Assistant Secretaries" and the foreclosure attorneys, like Woodall, who purport to act on MERS' behalf, are in-fact third party debt collectors masquerading as agents of the original creditor.

The prophylactic purposes of the FDCPA will be defeated by the MERS' rationale, whereby any original creditor can set up a "corporate resolution" form on its web site, enabling third-party debt collectors to fictitiously assign themselves officious titles with the creditor.  From the perspective of the least-sophisticated consumer, especially in the case of a homeowner facing foreclosure, the representation that an "Assistant Secretary" of an official-sounding organization like MERS is instituting foreclosure proceedings is misleading and deceptive.  The homeowner does not know with whom he or she should attempt to negotiate a settlement, or where he or she should go to obtain information on the amount due.  The homeowner has no way to distinguish between the MERS "Assistant Secretary" making foreclosure threats on his home and the myriad other mortgage-rescue schemers and charlatans who prey on the vulnerable in the present housing market downturn.

---

[25] 15 U.S.C. § 1692a(6) ("The term 'debt collector' . . . includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts, such term includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.").

The representation that Susan Smothers is an employee of MERS is false when the economic reality of the interaction indicates otherwise: the "employee" is not selected through any hiring process and is not paid any salary or compensation.  At minimum, the representation that Susan Smothers is an employee of MERS is misleading when the least-sophisticated consumer is likely to believe that a company other than the lender has intervened to prosecute the foreclosure when, in fact, no such thing has occurred.

Furthermore, for Woodall to claim in his NOD that MERS "has executed and delivered to said Trustee a written declaration of default and a demand for sale, *and **has deposited** with said Trustee such deed and **all documents evidencing the obligation secured thereby**"* (emphasis added) is misleading, and most likely false, as will be determined at trial.  Harris claims that MERS does not have his Note, endorsed by Lehman or in blank.  If MERS does not have it, it was not delivered to Woodall, as he claims.  Thus he is unlawfully attempting to collect a debt pursuant to the FDCPA.

Even if this Court decides that Woodall is not a debt collector in his capacity as a trustee for a secured mortgage obligation, he is a debt collector under the FDCPA when he purports to act on the authority of Susan Smothers and MERS, when he knows, or should have known, that she is not in fact a MERS employee and/or that MERS had no agency relationship with the true holder of Harris' note at the time Woodall recorded the NOD.

If Woodall can prove at trial that he has fully complied with the requirements of Title 57, Harris stipulates that his claim to violations of the FDCPA fails as a matter of law. However, as more fully developed *supra*, Harris has stated a claim that Woodall's appointment as trustee was unlawful and therefore his notice of default and subsequent sale of Harris' property through the trustee's sale are unlawful.  Contrary to Woodall's assertion in his brief that "Plaintiff does not allege that Woodall did anything outside of his role as trustee under the Deed of Trust" (at p. 5), Harris claims that Woodall acted without authority, that he was not in fact the trustee appointed in accordance with Title 57, and that he therefore was illegally demanding payment on a Note he had no claim to and that he unlawfully foreclosed upon the property.  *See* Complaint at ¶¶ 53-54, 56-61.

The NOD recorded by Woodall violates Title 57.  A substitution of trustee must "be executed and acknowledged by all of the beneficiaries under the trust deed or their successors in interest."  *Id.*  If Woodall is acting at the behest of Aurora (or any other lender by assignment), his SOT is *per se* illegal because of its failure to include the required acknowledgment(s).  At minimum, the SOT is not executed and acknowledged by Lehman or by the purchasers of Lehman's assets in bankruptcy.

Woodall claims that trustees are not debt collectors under the FDCPA by citing *Burnett.  See Burnett, supra*.  Once again, Woodall's reliance on *Burnett* is unpersuasive. The FDCPA claims in *Burnett* were dismissed by Judge Kimball because the plaintiff "merely parrots the language of the [FDCPA] statute and does not meet the pleading

standards under *Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007)." *Burnett,* at p. 5.  Because

Burnett failed to allege specific acts of debt collection beyond "parroting the language" of

the statute, her claim was dismissed.  Woodall once again misleads the Court in his brief

when he claims, "Plaintiff does not even allege that Woodall meets the definition of a "debt

collector" under 15 U.S.C. § 1691(a)(6)."  Defendants Memorandum, at pp. 5-6.  Harris'

Complaint alleges that "[t]hese thousands of MERS' "Vice-Presidents" and the[ir]

foreclosure attorneys, like the Trustee in this case, who purport to act on MERS' behalf, are

in-fact third party debt collectors masquerading as agents of the original creditor."  *Id.* at ¶

86.

     Additionally, § 1691(a)(6) does not provide the only statutory definition for a "debt

collector:" "The term 'debt collector' . . . includes any creditor who, in the process of

collecting his own debts, uses any name other than his own which would indicate that a

third person is collecting or attempting to collect such debts, such term includes any

person who uses any instrumentality of interstate commerce or the mails in any business

the principal purpose of which is the enforcement of security interests."  15 U.S.C. §

1692a(6).

     Harris' Complaint does not merely parrot the statute.  In his 30 paragraph, six-page

FDCPA Cause of Action, Harris makes numerous, specific, factual allegations as to how

MERS and Woodall are "debt collectors" acting in "connection with the collection of a debt."

Additionally, the Complaint recites a variety of case law for the proposition that post-

default foreclosure activities are debt collection activities within the meaning of the FDCPA.

Moreover, based on this Court's determination as to whether MERS is indeed the holder of

the "beneficial interest" in Harris' mortgage and/or whether MERS was acting on behalf of

the true note-holder, Woodall's appointment as trustee is invalid, his demand for payment

under the mortgage is an attempt to collect a debt that is not due (to him), and the

foreclosure sale he conducted is illegal. *Burnett* stands for the proposition, at best (because

it is *dicta*), that a trustee who, without any deception as to his identity or authority,

prosecutes a "non-judicial foreclosure does not act 'in connection with the collection of [a]

debt' when that trustee limits his or her conduct to the statutory requisites governing non-

judicial foreclosure." *Id.* at p. 6.

Woodall's reliance on *Maynard* is also in error. *See Maynard v. Cannon*, 650

F.Supp.2d 1138 (D.Utah 2008). In *Maynard,* the plaintiff executed a note with Household

Finance and granted Household a deed of trust as security. MERS was not involved. When

Maynard defaulted, Household directly substituted in the trustee/foreclosing attorney who

recorded the NOD at issue. *Id.* Woodall is not acting directly on the authority of the note-

holder like the trustee in *Maynard* because MERS' nominee authority on the Note

terminated in September 2008 with Lehman's bankruptcy sale. Unless Woodall can prove

at trial that MERS had a separate agency contract with the subsequent note-holder, his

authority to record the NOD and foreclose was invalid. *Maynard*, like *Burnett*, at best

stands for the proposition that a lawfully, lender-appointed foreclosure trustee who

30

performs his statutory duties is not a debt collector pursuant to the FDCPA.  The opinion

does not address MERS-based deception as to the identity of the true creditor.  Harris'

claim is not that Woodall is liable because he is a debt collector under the statute and failed

to give Harris his "mini-miranda" warnings.  Harris' claim is that Woodall's threat of

foreclosure (the NOD) and his actual foreclosure of the property violated the FDCPA

because his appointment was illegal and because he knowingly acted on the authority of a

purported creditor (Aurora) which hid its identity, *vis a vis* MERS, as the true creditor.

Furthermore, Title 57 supports Harris' demand that Woodall and/or MERS produce

the "blue-ink" note verifying and validating both the identity of the true note-holder and

the amount of the debt.  Woodall's NOD declares that MERS has delivered to him "all

documents evidencing the obligation secured thereby."  Thus, it should be no great

inconvenience for Woodall to produce the Note as requested by Harris, given that it is the

primary document "evidencing the obligation."

In sum, Harris has stated a claim for violations of the FDCPA by MERS, Woodall and

any unidentified lender who is instructing Woodall to act, when his appointment by MERS

was unlawful because MERS is not the mortgagee, by assignment or otherwise, and

therefore lacked authority to appoint a substitute trustee under Utah law.  Furthermore,

Woodall is a third-party debt collector who has committed deceptive and/or misleading

acts when he instituted foreclosure proceedings against Harris based on the masquerade of

MERS.  As a result of Woodall's deceptive debt collection practices, Harris lost his home.

Plaintiff therefore respectfully moves this Court to deny Woodall's motion to dismiss for failure to state claims upon which relief can be granted.

Dated this 26th day of July 2010.

*Abraham Bates*

_____

Abraham Bates
Counsel for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was served upon the following parties by US MAIL, postage prepaid, on the 26th day of July 2010, as follows:

| | |
|---|---|
| Lehman Brothers Bank<br>The Prentice-Hall Corporation System<br>(Registered Agent)<br>10 E. South Temple, Ste. 900<br>Salt Lake City, UT 84133 | Aurora Loan Services LLC<br>Corporation Service Company<br>(Registered Agent)<br>2180 S. 1300 E., Ste. 650<br>SLC, UT 84106 |
| ITS Title Insurance Services<br>6925 S. Union Park Center<br>Midvale, UT 84047-4142 | First American Financial Corporation<br>Blake T. Heiner<br>(Registered Agent)<br>560 S. 300 E.<br>Salt Lake City, UT 84111 |
| KeyBank National Association<br>127 Public Square<br>Cleveland, OH 44114-1217 | MERS<br>1818 Library Street, Suite 300<br>Reston, VA 20190 |
| Peter J. Salmon<br>Attorney for James Woodall<br>PITE DUNCAN, LLP<br>4375 Jutland Dr., Ste 200<br>P.O. Box 17935 | |

*Abraham Bates*
_____
Abraham Bates