PETER J. SALMON (UT BN 9382)
SPENCER MACDONALD (UT BN 10243)
PITE DUNCAN, LLP
4375 JUTLAND DRIVE, SUITE 200
P.O. BOX 17935
SAN DIEGO, CA 92177-0935
TELEPHONE: (858) 750-7600
FACSIMILE: (619) 590-1385

Attorneys for Defendant JAMES H. WOODALL

# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| RICHARD W. HARRIS,<br><br>Plaintiff,<br><br>v.<br><br>LEHMAN BROTHERS BANK, FSB, MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, ITS TITLE INSURANCE SERVICES, LLC, AURORA LOAN SERVICES, LLC, JAMES WOODALL, KEYBANK NATIONAL ASSOCIATION, FIRST AMERICAN TITLE INSURANCE AND DOES 1-5,<br><br>Defendants. | Case No. 2:10-cv-00690-CW<br><br>Judge Tena Campbell<br><br>**REPLY TO PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT JAMES WOODALL'S 12(b)(6) MOTION TO DISMISS** |

Defendant JAMES H. WOODALL ("Woodall") submits the following Reply in Plaintiff's Memorandum in Opposition to 12(b)(6) Motion to Dismiss.

/././.

/././.

## I.   SUMMARY OF THE ARGUMENT

Plaintiff's voluminous response to Mr. Woodall's Motion to Dismiss includes a plethora of unsupported and/or conclusory allegations, unsupported and unsound conclusions of law, and a mish-mash of self-serving policy arguments. These arguments include statements claiming that MERS is not a beneficiary under the Trust Deed (Opposition at pp. 5-7); that "economic realities," and not the plain language of the Trust Deed, governs MERS status (id. at p. 9); that MERS cannot be a mortgagee because it did not pay value for the Note (id. at p. 9); that MERS cannot be the nominee of the lender's successor or assign unless it has a separate contract with the new undisclosed principal (id. at p. 12); and that MERS lacks standing where it does not own the proceeds generated from the foreclosure sale (id. at p. 13).

This shotgun approach fails to address a fundamental threshold issue which vitiates Plaintiff's argument, which is that Title 57 of the Utah Code, not Plaintiff's laundry list of supposed grievances, establishes the duties and obligations of a trustee in nonjudicial foreclosure proceedings. Plaintiff seeks to create a litany of non-statutory duties and obligations, impose them on Woodall, and then sue him for his supposed non-compliance of these duties. The arguments based on this faulty premise necessarily fail because Woodall's duties as trustee are established *solely* by Title 57. Inasmuch as Plaintiff has not alleged any violation of that statute, Plaintiff's claims against him fail as a matter of law and should be dismissed pursuant to Rule 12(b)(6).

/./././

/././

## II. PLAINTIFF'S FIRST CAUSE OF ACTION FAILS BECAUSE MERS MEETS THE STATUTORY DEFINITION OF "BENEFICIARY" AND HENCE HAS STANDING TO BRING A FORECLOSURE ACTION.

Plaintiff's first cause of action seeks declaratory relief for the proposition that MERS lacks standing to initiate foreclosure proceedings against Plaintiff based upon the premise that "only the note-holder can perform a substitution of trustee" as argued at page 20 of her Opposition. On that basis, Plaintiff seeks a declaration that Woodall lacks standing as a substituted trustee, effectively arguing that no valid substitution trustee under a deed of trust identifying MERS as a beneficiary could ever occur. As set forth herein, this cause of action fails as a matter of law.

In Utah, a "beneficiary" is "the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest." Utah Code Ann. § 57-1-19(1) (1988). Plaintiff admits that the Trust Deed identifies and designates MERS as the beneficiary, but then asks this Court to disregard - and even go against - the plain language of the Utah Code and the Trust Deed and hold that MERS is not the beneficiary. This approach to statutory construction is unworkable. "When interpreting statutes, [the court's] primary goal is to evince 'the true intent and purpose of the Legislature.'" State ex rel. Division of Forestry, Fire & State Lands v. Tooele Co., 2002 UT 8, P10, 44 P.3d 680 (internal citation omitted). Generally, the "'best evidence' of a statute's meaning [is] the plain language of the act." Id. Moreover, in reading the language of an act, the Court must "seek 'to render all parts [of the statute] relevant and meaningful,' and we therefore 'presume the legislature used each term advisedly and . . . according to its ordinary

meaning.'" Id. (alterations and ellipsis in original) (citations omitted). The statutory language here is plain and unambiguous. There is no legitimate factual or legal dispute that MERS meets the statutory definition of "beneficiary," and hence it is entitled to proceed with the foreclosure action.

Plaintiff also cites a 138-year-old case from the U.S. Supreme Court for the proposition that "'[t]he note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter is a nullity.'" Opposition at p. 12 (quoting Carpenter v. Longan, 83 U.S. 271, 274 (1872). This authority is inapposite to the present case because it predates, and therefore did not contemplate, the concept of nonjudicial foreclosures. Moreover, this argument has failed when used in jurisdictions similar to Utah.

For example, in Maxa v. Countrywide Loans, Inc., Slip Copy, 2010 WL 2836958 at *4 (D.Ariz. 2010) (unpublished), the plaintiff made allegations virtually identical to those in the present case (that defendants must show possession and ownership of both the note and deed of trust to have standing to conduct a trustee's sale of the Property; that MERS was not a valid beneficiary under the deed of trust because it never had ownership and possession of the Note; and that MERS therefore could not assign any interest in the deed of trust). The Maxa court went on to dismantle the Carpenter- based arguments proffered now by the Plaintiff in the present case:

> 1. **Carpenter is Not Relevant to Nonjudicial Foreclosure Disputes**: The Maxa court found that Carpenter pertained to a note and mortgage that had been assigned to a third party before the note matured, and the borrower and also delivered wheat and flower to the lender to be sold and proceeds applied to the note. The dispute,

REPLY TO OPPOSITION TO MOTION TO DISMISS                    2115525.wpd

then, was the amount due to the lender in light of those specific facts. In contrast, the dispute in Maxa (essentially identical to the dispute in the present case) was whether the lender was required to show possession of the note in order to enforce the mortgage. In other words, Carpenter dealt with "a loan that had not yet matured," and hence was distinguishable from cases involving "a home mortgage in default" as in Maxa (and the present case). Id. at *4 (internal citations omitted).

2. **Statutes Governing Nonjudicial Foreclosures Does Not Require Foreclosing Party to be the Holder of the Note**: The Maxa court noted that nonjudicial foreclosures under a deed of trust is "governed purely by state statute," which statute "establishes no requirement that a person seeking foreclosure of mortgage be the holder of the note." Id. (internal citations omitted).

3. **A Key Distinction Exists Between 2-Party Mortgages and 3-Party Deeds of Trust**: The Maxa court recognized the vital distinction between a real estate mortgage such as the one disputed in Carpenter ("A mortgage is a two-party instrument between the mortgagor (borrower) and the mortgagee (lender) by which the mortgagor pledges real property as security for the performance of payment or other obligations to the mortgagee..") and a deed of trust ("A deed of trust is a three-party instrument where the trustor (borrower) transfers legal title in real property to the trustee (legal title holder) as security for the performance by the trustor or a third party of obligations to the beneficiary (lender)..."). Id. (internal citations omitted).

4. **The "Show Me the Note" Argument Fails as a Matter of Law**: The Maxa court rejected the plaintiff's "show me the note" argument, observing that "a trustee's sale is not an action to enforce the note. Rather, it is an exercise of the power of sale upon default which the trustor granted to the trustee under the deed of trust," and that the Arizona statutory scheme "confers power of sale on the trustee upon default or breach of the contract secured by the trust deed without reference to enforcing or producing a note or other negotiable instrument." Id. (citations omitted).

The Maxa court further noted that "[p]laintiff cites no authority for her contention that, before exercising the power of sale, a trustee or beneficiary must show possession of the original note memorializing the underlying debt or other proof of being the holder of the note identified in the security instrument, and the Court has found none," and "Many [federal] district courts for the District of Arizona have rejected the 'show me the note' argument." Id. at *5 (citations omitted).

5. **Plaintiff's Deed of Trust Confers the Power of Sale to Trustee and Empowers**

>   **MERS to Exercise Lender's Rights**: The <u>Maxa</u> court concluded that the plaintiff in that case conveyed in the deed of trust "the power of sale to the trustee." The plaintiff also "empower[ed] MERS, as the lender's nominee, to exercise the lender's rights, including the right to foreclose." The court reiterated that "Arizona law does not require the trustee or beneficiary to possess the Note in order to exercise the power of sale granted by the Deed of Trust" and then found that "the first claim of the Amended Complaint fails to state a claim upon which relief can be granted." <u>Id</u>. (citations omitted).

The Utah statutory scheme and related federal precedents are, in all material respects, identical to the facts and circumstances underlying the <u>Maxa</u> case. Consequently, this Court should arrive at the same conclusion as seen in <u>Maxa</u>: that Plaintiff's Complaint fails to state a claim that can withstand MERS' right to foreclose, and consequently the Plaintiff's first cause of action should be dismissed with prejudice.

## III. PLAINTIFF'S SECOND CAUSE OF ACTION FAILS BECAUSE NONJUDICIAL FORECLOSURES ARE NOT DEBT COLLECTIONS PROCEEDINGS UNDER THE FDCPA.

Plaintiff's Opposition seeks to disregard the well-reasoned Utah Federal Court decisions finding that nonjudicial foreclosure under a deed of Trust does not constitute debt collection within the meaning of the FDCPA, and particularly when MERS is the beneficiary appointing the nonjudicial foreclosure trustee. <u>See</u>, e.g., <u>Kee v. R-G Crown Bank</u>, 656 F.Supp.2d 1348, 1354 (D.Utah.C.Div. 2009) (internal citations omitted) ("A non-judicial foreclosure is not the collection of a debt under the FDCPA."); <u>Maynard v. Cannon</u>, 650 F.Supp.2d 1138 (D.Utah.C.Div. 2008) (citation omitted) ("'Security enforcement activities [such as nonjudicial foreclosures] fall outside the scope of the FDCPA because they aren't debt collection practices . . . several provision[s] of the

FDCPA [distinguish] between debt collection and security enforcement...'").

The federal district court in <u>Maynard</u> aptly summarized the rationale for this holding:

> [J]udicial foreclosure cases against *an individual property owner* are distinguishable from a nonjudicial foreclosure against *the property*...
>
> One receiving debt collection letters may agonize that she cannot comply with them, hence she needs the [FDCPA's] protection. One asked to comply with a security interest enforcement request, on the other hand, has the security that she can return.

<u>Maynard</u>, 650 F.Supp.2d at 1141 (citations omitted) (emphases added). A nonjudicial foreclosure of a trust deed is "[distinct] from the collection of funds from a debtor" because "'with a trust deed, the trustee possesses the power of sale which may be exercised after a breach of the obligation for which the transfer in trust of the interest in real property is security.'" <u>Id</u>. Consequently, "actions taken by attorneys 'as part of the foreclosure may not be challenged as FDCPA violations.'" Id. (citation omitted). This conclusion "complies with the majority of circuits, which have held that a non-judicial foreclosure is not the collection of a debt." <u>Kee,</u> 656 F.Supp.2d at 1354. Consequently, "[a]ll claims under the FDCPA based on allegations that the Defendants are collecting a debt or are debt collectors are appropriately dismissed as failing to state a claim upon which relief can be granted." <u>Id</u>. Plaintiff's second cause of action fails as a matter of law and should be dismissed with prejudice.

/././.

/././.

/././.

/././.

IV.  **PLAINTIFF'S THIRD CAUSE OF ACTION FAILS BECAUSE THE QUIET TITLE CLAIM IS DERIVATIVE FROM, AND WHOLLY DEPENDENT UPON, OTHER FAILED CAUSES OF ACTION.**

Plaintiff premises her Opposition to the motion to dismiss the Quiet Title action on the same theory as her opposition to the "standing" of MERS as a beneficiary entitled to commence nonjudicial foreclosure proceedings under Utah law. However, she expands this argument into claims that the deed of trust at issue is invalid as a matter of law, that no named defendant has any valid interest in the Deed of Trust, and the Court should order the deeds of trust released (Complaint at paragraphs 96 through 98.)

Rather than demonstrate the strength of her own title, Plaintiff argues for the purported invalidity of the defendants' claim of interest in the property, directly contravening the requirements for stating a quiet title claim under Utah law. See Church v. Meadow Springs Ranch Corp., 659 P.2d 1045, 1048-49 (Utah 1983). By the terms of the Deed of Trust and his substitution of trustee, Woodall claims no interest in the subject Property other than as permitted under Title 57 of the Utah Code. As such, Plaintiff has failed, and still fails, to state a viable quiet title claim as to Woodall's interest in the Deed of Trust as a matter of law, meaning dismissal pursuant to Rule 12(b)(6) is appropriate.

/././.

/././.

/././.

## V. PLAINTIFF'S FOURTH CAUSE OF ACTION FAILS BECAUSE NO EQUITABLE RELIEF EXISTS AS PERTAINING TO WOODALL.

Plaintiff's fourth and final cause of action seeks "equitable relief" against "all defendants," including Woodall. However, "equitable relief" is a remedy or form of relief, not a "claim for which relief can be granted" as contemplated in Rule 12(b)(6). See, e.g., Neu v. Terminix Intern., Inc., 2008 WL 962096 (N.D.Cal. 2008) (unpublished) ("a request for equitable relief is not a cause of action…"). The fourth cause of action therefore fails to state a "claim" and should be dismissed. To the extent the Court construes "equitable relief" as a "claim," it still fails the requirements of Rule 12(b)(6) because it is wholly dependent on the first and second causes of action. Woodall was acting lawfully in his capacity as trustee in the foreclosure proceeding. Dismissal pursuant to Rule 12(b)(6) is therefore appropriate and should be granted.

## VI. CONCLUSION

Plaintiff's claims against Woodall uniformly fail as a matter of law. Woodall therefore respectfully requests that the Court grant his motion to dismiss, and grant such other and further relief as the Court deems proper.

Dated: August 12, 2010                    PITE DUNCAN, LLP


/s/ Peter J. Salmon
PETER J. SALMON
Attorneys for Defendant JAMES H. WOODALL

**CERTIFICATE OF SERVICE**

I, the undersigned, declare: I am, and was at the time of service of the papers herein referred to, over the age of 18 years, and not a party to this action. My business address is 4375 Jutland Drive, Suite 200, P.O. Box 17935, San Diego, CA 92177-0935.

I hereby certify that on August 12, 2010, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

| | |
|---|---|
| Abraham C. Bates<br>Timothy C. Dudley<br>WASATCH ADVOCATES<br>4525 Wasatch Blvd., Suite 300<br>Salt Lake City, UT 84124<br>Email: abe@slclawfirm.com<br>*Attorneys for Plaintiff* | Philip D. Dracht<br>FABIAN & CLENDENIN<br>215 S. State St., Suite1200<br>Salt Lake City, UT 84111-2323<br>Email: pdracht@fabianlaw.com<br>*Attorney for Defendants Lehman Brothers Bank, Mortgage Electronic Registration Systems and Aurora Loan Services* |

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this 12th day of August 2010, at San Diego, California.

_____
MARSHA L. JOHNSON

2117357.wpd