Abraham Bates (12440)
**WASATCH ADVOCATES LLC**
4525 Wasatch Blvd. Ste 300
Salt Lake City, Utah 84124
Telephone: (801) 662-0077
Facsimile: (801) 662-0082
abe@slclawfirm.com
Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD W. HARRIS,<br><br>    Plaintiff,<br><br>    vs.<br><br>LEHMAN BROTHERS BANK; MORTGAGE ELECTRONIC REGISTRATION SYSTEM; ITS TITLE INSURANCE SERVICES LLC; AURORA LOAN SERVICES, LLC; JAMES H. WOODALL; KEYBANK NATIONAL ASSOCIATION; FIRST AMERICAN TITLE INSURANCE; & DOEs 1-5,<br><br>    Defendants. | **PLAINTIFF'S AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANTS LEHMAN, MERS AND AURORA'S 12(B)(6) MOTION TO DISMISS**<br><br>**HEARING REQUESTED**<br><br><br>Case No. 2:10cv00690<br><br><br>Judge: Campbell |

Plaintiff Richard W. Harris ("Harris") respectfully submits the following Amended Memorandum of Points and Authorities in Opposition to Defendants Lehman, MERS and Aurora's 12(B)(6) Motion to Dismiss.  In the following Amended Memorandum, Plaintiff has removed allegations related to the relationship between Pite Duncan, LLP and Cal-Western Reconveyance by agreement between Plaintiff's counsel and Pite Duncan, LLP.

1

### STATEMENT OF FACTS

1. Harris executed a mortgage promissory note (the "Note") with Lehman Brothers

   Bank ("Lehman") on April 3, 2007 in order to Purchase property formally known as

   BEGINNING AT A POINT WHICH IS SOUTH 33.00 FEET AND EAST 757.89 FEET FROM THE NORTHWEST CORNER OF SECTION 27, TOWNSHIP 3 SOUTH, RANGE 1 WEST, SALT LAKE BASE AND MERIDIAN, AND RUNNING THENCE EAST 116.06 FEET; THENCE SOUTH 627.0 FEET; THENCE WEST 116.06 FEET; THENCE NORTH 627.0 FEET TO THE POINT OF BEGINNING.

2. As security for the Note, Harris granted Lehman a deed of trust ("Trust Deed"),

   which was recorded against the Property on April 5, 2007.  *See* Trust Deed, attached

   as Exhibit 1.

3.  The Trust Deed named Lehman as the "Lender," but recited that:

   "**MERS**" is the Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this security instrument.** (emphasis original)

   *See* Trust Deed, at ¶ (E).

4. The Trust Deed also declares, under the heading "TRANSFERS OF RIGHTS IN THE

   PROPERTY":

   The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS.

   *See* Trust Deed, at ¶ (R).

5. The Trust Deed also recites that:

   Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with

law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and cancelling this Security Instrument.

*See* Trust Deed, at ¶ (R).

6.  The Trust Deed further recites that:

    **Substitute Trustee.**  Lender, at its option, may from time to time remove Trustee and appoint a successor trustee to any Trustee appointed hereunder.

    *See* Trust Deed, at ¶ 24.

7.  In September of 2008, Lehman filed for bankruptcy because of liabilities for its sub-prime lending, making it the largest failure of an investment bank in history.  *See* Lehman Brothers completes third sale of assets, Barclays Capital Press Release, and 9/23/10 Bloomberg News,  attached as Exhibit 2.   Lehman sold of most, if not all, of its assets in order to liquidate creditor claim  and Lehman has yet to exit bankruptcy. *Id.*

8.  Upon information and belief, therefore, Harris' Note may have been assigned to Bain Capital and/or Hellman & Frieman or to Barclay's Capital as of September 2008.

9.  Harris defaulted on his obligations under the Note and Trust Deed as of May 1, 2009.

10. Harris made efforts to secure a forbearance or modification of his mortgage obligations, but was unable to determine with whom he should negotiate when he was provided with the foreclosure-related notices on his property.  *See* SOT, NOD, *infra*.

11. On August 14, 2009, MERS executed a substitution of trustee ("SOT") on the Property, purporting to substitute licensed Utah attorney James Woodall ("Woodall") as trustee.  *See* SOT, attached as Exhibit 3.

12. The SOT was recorded on August 18, 2009, with instructions to return the recorded document to the law offices of Woodall.  *Id.*

13. By recording the SOT, Woodall published all statements therein to the public at large.

14. Woodall also caused the SOT to be delivered to Harris.

15. The SOT declares that Woodall is appointed successor trustee under a Deed of Trust "to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as Beneficiary . . ." *Id.*

16. The SOT makes no mention of Lehman or any other lender by assignment, nor does it make any indication that MERS is acting as "nominee," bare-legal title holder, or agent.  *See id.*

17. The SOT was executed by "Susan Smothers" "Assistant Secretary of MERS" and the executing authority is "Mortgage Electronic Registration Systems, Inc." *Id.*

18. Susan Smothers ("Smothers") is not, in fact, a bona-fide employee of MERS, but is an employee of Cal-Western.  *See* Smothers Bio, attached as Exhibit 4; see also Smothers' Trustee's Deed, attached as Exhibit 5.

19. On August 17, 2009, Woodall recorded a notice of default ("NOD") on Harris'

4

Property.   The NOD was recorded on August 18, 2009.   *See* Notice of Default, attached as Exhibit 6.

20. By recording the NOD, Woodall published all statements therein to the public at large.

21. Woodall also caused the NOD to be delivered to Harris.

22. Woodall's NOD declares notice that Harris, as Trustor, had defaulted on a deed of trust "in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as Beneficiary . . . ."  *Id.*  The NOD further declared that "the beneficial interest under such Deed of Trust **and the obligations secured thereby** are presently owned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." (emphasis added) *Id.*

23. The NOD further declares that Harris was in default for failure to pay "**all subsequent sums advanced by beneficiary** pursuant to the terms and conditions of said deed of trust" and that, "by reason of such default, MORTGAGE ELECTRONIC REGISTRATION SYTEMS, INC. the Beneficiary under such Deed of Trust, has executed and delivered to said Trustee a written declaration of default and demand for sale, and **has deposited with him all documents evidencing the obligation secured thereby** . . . " (emphasis added).  *Id.*

24. The NOD makes no mention of Lehman or any other lender by assignment, nor does it make any indication that MERS is acting as "nominee," bare-legal title holder, or agent.  *See id.*

25. Woodall regularly tells borrowers and attorneys who call him in an effort to secure a modification, forbearance, or postponement of sale, that he has no authority to provide such relief and that the borrower or attorney must contact the lender.

26. In March, 2010, Woodall caused to be posted in a conspicuous fashion a Notice of Trustee's Sale on Harris' Property, containing the same or similar statements contained in the NOD, whereby all passersby could see and read the statements included therein.

27. On April 29, 2010, Woodall conducted a public auction and sold Harris' Property to Aurora for the "price bid' of $571,571.00" according to a trustee's deed ("Trustee's Deed") Woodall executed and recorded the same day.  *See* Trustee's Deed, attached as Exhibit 7.

28. By recording the Trustee's Deed, Woodall published all statements therein to the public at large.

29. Woodall also published similar statements, at least three times, in publications with broad circulation throughout the state of Utah.

30. Upon information and belief, $571,571.00 represented the exact or approximate amount of the indebtedness due on Harris' Note and Aurora purchased the Property through a credit bid.

31. The Trustee's Deed again represented that Harris had conveyed his property in trust "to secure certain obligations in favor of MORTGAGE ELECTRONIC REGISTRATION

SYSTEMS, INC. as Beneficiary . . . ." *See Id.*  The deed makes no reference to Lehman or to MERS as "nominee," agent or bare legal title-holder for Lehman (or its successors and assigns). *See id.*

32. On October 3, 2010, Harris discovered new information, from the MERS database, indicating that Bank of America, N.A., ("BAC") is the purported "investor" which owns his mortgage obligations. *See* October 3 MERS Loan ID, attached as Exhibit 8.

33. The recorded chain of title on Harris' property discloses no recorded interest in BAC either before, or after, the April 29 public auction.  *See* Title Abstract, attached as Exhibit 9.

34. According to MERS, as of October 3, 2010, Aurora is merely the servicer of Harris' mortgage. *Id.*

35. In the last week of September, 2010, three of the largest mortgage lenders and servicers in the United States, including BAC, made national news headlines by announcing that they had prosecuted tens of thousands of foreclosures against homeowners across the country by swearing, under oath, that they physically possessed note obligations entitling them to foreclose when, in fact, they lacked or could not prove possession of the instruments.  *See* GMAC Suspends Evictions in 23 States, JPMorgan Chase Halts 56,000 foreclosures, and BAC Halts Foreclosures in 23 States, attached as Exhibit 10.  Yesterday, October 3, the New York Times published an article summarizing these recent events.  *See* Flawed Paperwork Aggravates a

Foreclosure Crisis, attached as Exhibit 11.  The Times articles is a perfect illustration of Harris' claims.

## ARGUMENT[1]

**I.     Harris has stated a claim for (1) declaratory judgment that Defendants violated Title 57 by based on MERS claims of ownership of the Note and Trust Deed; (2) violations of the FDCPA when Defendants have violated Title 57 and used "deceptive forms" to attempt to collect a debt.**

### A.  Harris has properly stated claims for declaratory judgment.

MERS is not the beneficiary of Harris' Trust Deed, despite the language of paragraphs (E) and (R).  According to Utah law, the "beneficiary" of a trust deed "means the person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest."  U.C.A. 57-1-19(1) (1988).  Additionally, only the beneficiary may substitute the trustee to a mortgage: "[t]he beneficiary may appoint a successor trustee at any time by filing for record in the office of the county recorder of each county in which the trust property . . . is situated, a substitution of trustee."  U.C.A. § 57-1-22 (2002).  Additionally, the substitution of trustee must "be executed and acknowledged by all of the beneficiaries under the trust deed or their successors in interest."  *Id.*

MERS maintains that it is the "mortgagee of record," or, in this case, "the beneficiary" under the trust deed even though its ownership of the mortgage is purely

---

[1] The arguments in this Memorandum, like the arguments in the Complaint, borrow heavily, and often directly, from University of Utah Associate Dean Christopher Peterson's law review article entitled *Foreclosure, Subprime Mortgage Lending, and The Mortgage Electronic Registration System*, attached as Exhibit 14.

fictional.  According to Black's Law Dictionary, a "mortgagee" is "[o]ne to whom property is mortgaged; the mortgage creditor, or lender.  – Also termed *mortgage-holder*."[2]  MERS is never entitled to receive the borrower's monthly payments, nor is it entitled to receive the proceeds of a foreclosure or deed of trust sale.  MERS has no actual financial interest in any mortgage loan.  MERS does not, and cannot, provide lien releases of the mortgages it purports to own.  Because MERS does not actually advance any loan principal to the homeowner and because it does not have the right to receive any payments from the borrower, MERS is not the actual party in interest in any foreclosure proceeding.

In order to move foreclosures along as quickly as possible, MERS allows actual mortgagees and loan assignees or their servicers to bring foreclosure actions in MERS' name as "nominee", rather than their own.  Once a loan is assigned to MERS, public records can no longer reveal who (or what) actually owns a lien on property.  This is perfectly illustrated in the present case, where the original lender (Lehman) went bankrupt because of sub-prime lending and sold its loan portfolios in bankruptcy to other parties.  Harris is supposed to take for granted that MERS and Woodall are acting on actual authority of the present note-holder, even though public records for real property in Salt Lake County still indicate that Lehman is the note-holder, an improbability because of Lehman's various asset sales in bankruptcy.

Woodall's NOD fails to identify the creditor or note-holder whose authority he is purportedly acting upon.  The NOD declares that MERS is the lender (holds the beneficial

---

[2] BLACK'S LAW DICTIONARY (8th ed. 2004), mortgagee.

interest), suggesting that Harris should contact MERS if he would like to cure his default or negotiate a loan modification.  But MERS has no authority to receive payment or to modify the Note.

The roles and rights of various players in a lending transaction—such as the borrower, the lender, and the trustee of the deed of trust—have been well settled. One of these settled principles is that the beneficiary of the deed of trust is the party to whom the debt is owed.  *See Hellman v. Capurro*, 549 P.2d 750, 751 (Nev. 1976) ("A mortgagee or a beneficiary to a deed to trust is entitled to only one satisfaction of *his debt*." (emphasis added)); *see also Monterey S.P. P'ship v. W.L. Bangham, Inc.*, 777 P.2d 623, 627 (Cal. 1989) ("[A] deed of trust typically secures a debt owed the beneficiary . . . .").  MERS' membership rules clearly state that members are never permitted to claim MERS is a "note-owner" as part of foreclosure proceedings.[3]  On September 25, 2009, R.K. Arnold, the President and CEO of MERSCORP, Inc. – the parent of MERS - was deposed in Alabama.  In his deposition, Arnold admitted that MERS does not have a beneficial interest in any mortgage; that it does not loan money; and that it does not suffer a default if a borrower fails to repay a mortgage loan.[4]

The "nominee/beneficiary" language in Harris' Trust Deed describing MERS is schizophrenic and mutually exclusive: a "nominee" is an agent for the mortgagee, while the

---

[3]MERS Rules of Membership, Rule 8, Section 2(a)(i), 2(c) (Appx. 469-70).
[4]*See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc.*, Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009)  available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

"beneficiary" is the mortgagee itself.  MERS' description of itself is false on its face, because the same entity cannot simultaneously be both "solely" an agent *and* a principal with respect to the same property right.[5]

The reason for MERS' schizophrenic description is straightforward: when MERS is challenged in litigation related to its standing to foreclose, MERS takes the position, as its corporate counsel explains, that it "gets its authority to assign and/or discharge a mortgage because MERS is the mortgagee, and as such holds legal title to the mortgage."[6]  When MERS is challenged in litigation based on fraud, deceptive practices, or other statutory consumer protection claims associated with loans registered in its system, MERS argues it is merely an agent ("nominee") without any exposure to liability.[7]

---

[5] See Restatement (Third) of Agency Law § 1.01 ("Agency is the fiduciary relationship that arises when one person (a "principal") manifests assent to another person (an "agent") that the agent shall act on the principal's behalf and subject to the principal's control. . . ."). Moreover, neither the popularity of MERS' self-characterization, nor its contractual recitation, are controlling. *Id.* § 1.02 ("An agency relationship arises only when the elements stated in § 1.01 are present. Whether a relationship is characterized as agency in an agreement between the parties or in the context of industry or popular usage is not controlling.").

[6] MERS Forum, FAQ with Sharon Horstkamp, MERS Vice President and Corporate Counsel, www.mersinc.org/forum/viewreplies.aspx?id=13&tid=73 last viewed June 9, 2004.

[7] *Compare* Landmark Nat. Bank v. Kesler, No. 98,489, 2008 WL 4180346, at *1-*2 (Kan. Ct. App., Sept. 12 ,2008) ("What is MERS's interest? MERS claims that it holds the title to the second mortgage . . . . MERS objects to its characterization as an agent...") *with In re* Escher, 369 B.R. 862 (E.D. Pa. 2007) ("MERS' role as nominee leads the Court to conclude that it cannot be liable on any of the Plaintiff's [Truth in Lending or Pennsylvania consumer protection] claims. A nominee is understood to be an agent for another. . . . Therefore MERS will be dismissed from this action and no further reference to MERS will be made." ); Hartman v. Deutsche Bank Nat. Trust Co., No. 07-5407, 2008 WL 2996515, *2 (E.D.Pa. Aug. 1, 2008) (accepting MERS' argument that it could not be liable under the Truth in Lending Act because there was no colorable allegation "that ... [the plaintiff's] mortgage loan was assigned to MERS, or that MERS was ever the owner of that obligation."); Brief in Support of Defendant's Motion to Dismiss at 3, King v. Ocwen, Civil Action No. 07-11359, 2008 WL 2063553 (E.D.Mich, April 14, 2008) (arguing that MERS could not be liable for Fair Debt Collection Practices Act violations because "*HSBC was the mortgagee* for the property. Ocwen is the servicer for the property. [And,] MERS acted solely as the nominee for the original mortgagee of the property") (emphasis added).

11

The language of the Trust Deed does not determine the respective roles of the parties to the transaction.  Mortgage contracts are construed based on the economic realities of the transaction, and not upon the language the parties use to describe the bargain.[8]  The economic reality of a mortgage transaction clearly indicates that MERS is not a mortgagee or an assignee.  There are three fundamental economic reasons why MERS is not the mortgagee: (1) MERS does not fund any loans; (2) homeowners do not promise to pay MERS any money; and (3) MERS is never entitled to receive the proceeds of a foreclosure sale.  These funds go to the *actual mortgagee* (or assignee) that is the true owner of the lien.

In Harris's case, the recorded documents on title subsequent to the Trust Deed (SOT, NOD, Trustee's Deed) make absolutely no reference to any identified lender as beneficiary nor do they characterize MERS as "nominee", agent, or legal-title holder for a beneficiary. Every single reference to MERS in these documents clearly and conspicuously declares that MERS  is "the Beneficiary"; that the trust deed obligations are "in favor of [MERS], as Benficiary"; and most significantly, the NOD declares  that "the beneficial interest under such Deed of Trust **and the obligations secured thereby** are presently owned by

---

[8]Ja-Mo Associates, Inc. v. 56 Fulton St. Garage Corp. 30 A.D.2d 287, 290 (N.Y. A.D. 1968) ("While the court is not bound by the label which the parties applied to the payment and may examine the true nature of the transaction, the payment here bore none of the distinguishing characteristics which would render section 233 (of the Real Property Law . . . ) applicable. There was no intention that the landlord hold the money as security.") (citations omitted); Szabo Food Service, Inc. of North Carolina v. Balentines, Inc., 206 S.E.2d 242, 249 (N.C. 1974); ("It has long been the rule with us that in determining whether a contract is one of bailment for use, a lease with an option to purchase, or one of sale with an attempt to retain a lien for the purchase price, the courts 'do not consider what description the parties have given to it, but what is its essential character.") (citation omitted); Lee v. Barnes, 362 P.2d 237, 240 (Wash. 1961) ("The label affixed to a security interest by the parties does not necessarily determine its legal significance.")

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC." (emphasis added) *See* NOD, *supra.* The NOD is explicitly claiming that MERS "presently owned" the Note. This claim is in direct violation of the MERS membership rules, as stated *supra*.

MERS' claim that it owns legal title to mortgages by virtue of assignment is also false on its face because MERS does not pay the mortgage originator value in exchange for the mortgage. On the contrary, the originator or servicer pays MERS to take the "assignment." Under this "assignment," MERS is still not entitled to receive repayment of the mortgage loan, nor is it entitled to the proceeds of a foreclosure sale." The fee MERS is paid is to provide recordkeeping and foreclosure services, not to own a lien on a family residence.

Federal consumer protection and bankruptcy law also show that MERS does not own legal title to loans registered in its database. Under the Truth in Lending Act ("TILA") and the Home Ownership and Equity Protection Act ("HOEPA"), a mortgage assignee can be liable for an original lender's violations of those statutes. If MERS owns legal title to the mortgages in its database, it would have taken on liability for tens of millions of residential mortgages, liability the company has repeatedly disclaimed.

MERS' claim that it owns legal title to mortgages is further undermined by the long-standing rule that a mortgage follows a negotiated promissory note.[9] Courts are virtually unanimous in holding that, where a mortgage lender with a promissory note negotiates that note to a holder, the holder of the promissory note also obtains any mortgage securing

---

[9] RESTATMENT (THIRD) OF PROPERTY:MORTGAGES§5.4 (a), cmt. B (1997); NELSON &WHITMAN, *supra* note X, at §5.27; GEORGE E. OSBORNE, HANDBOOK ON THE LAW OF MORTGAGES § 223 (1970).

that note.[10]  According to Harris' Trust Deed, MERS holds the beneficial interest in the mortgage even when a non-MERS member purchases his Note ("[t]**he beneficiary of this Security Instrument is MERS** (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. ").  This is in direct violation of well-settled property and agency law.

The records of the Salt Lake County recorder show no assignment or conveyance of Harris' mortgage to any party before the conveyance purportedly made by the April 29, 2010 Trustee's Deed.  Courts in New York have confirmed that "foreclosure of a mortgage may not be brought by one who has no title to it . . . ." *Kluge v. Kugazy*, 145 A.D.2d 537, 538, 536 N.Y.S.2d 92 (1988). The New York Appellate Division, Third Department recently ruled that an assignee of a mortgage does not have a right or standing to foreclose a mortgage unless the assignment is complete at the time of commencing the action. *Lasalle Bank Nat. Ass'n v. Ahearn*, 59 A.D.3d 911, 875, 912, N.Y.S.2d 595, 597 (2009).  Thus even the true holder of Harris' note were to record the assignment today, a new and proper SOT and NOD would have to be recorded, on the authority of the actual note-holder – not MERS and likely

---

[10] In re Ivy Properties, Inc., 109 B.R. 10, 14 (Bkrtcy.D.Mass.,1989) (under Massachusetts common law the assignment of a debt carries with it the underlying mortgage); Margiewicz v. Terco Properties of Miami Beach, Inc., 441 So.2d 1124, 1125 (Fla.Dist. Ct. App.1983) (When a note secured by a mortgage is assigned, the mortgage follows the note into the hands of the assignee); Rodney v. Arizona Bank, 836 P.2d 434, 436 (Ariz. Ct. App.1992); Brewer v. Atkeison, 25 So. 992, 993 (Ala. 1899) ("[A]n assignment by the mortgagee of one of the mortgage notes operates as an assignment pro tanto of the lien upon the lands."); Martindale v. Burch, 10 N.W. 670, 671 (Iowa 1881) ("That an assignment or transfer of a note, secured by a mortgage, operates as an assignment of the mortgage lien, is a settled rule of law."); Robinson Female Seminary v. Campbell, 55 P. 276. 277 (Kan. 1898) ("the assignment of the note operated as an assignment of the mortgage made to secure the note."); Page v. Pierce, 26 N.H. 371, 1853 WL 2428, at *4 (1853) ("It is settled in this State, that the assignment of a debt secured by a mortgage of land, is *ipso facto* an assignment of the security also.").

not Lehman, a bankrupt institution which appears to have sold most of its loan assets to creditors in bankruptcy.

In a widely cited decision, the U.S. Supreme Court held that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident.  An assignment of the note carries the mortgage with it, while an assignment of the latter is a nullity." *Carpenter v. Longan*, 83 U.S. 271, 274 (1872), attached as Exhibit 12.  As *Carpenter* mandates, **the assignment of the beneficial interest to MERS is "a nullity"** when MERS was not also assigned the Note (MERS's membership rules prohibit "note ownership" claims, *supra*).

No state recording statute, including Utah's, authorizes mortgagees or their assignees to vicariously record using the name of an agent or nominee.  *See* U.C.A § 17-21-1 *et seq.*; *see also* U.C.A. § 57-1-20 (2001).  Utah's Recording Act also specifies that the name of the mortgagee or assignee must be included so that records and indexes can be drawn up from the names of both parties.  U.C.A 17-21 *et seq*.  While the record does not disclose whether Harris' Note was securitized, Lehman was one of the pioneers of the securitization of sub-prime loans into mortgage-backed securities ("MBSs") and collateralized-debt obligations ("CDOs").  But Harris' claim does not depend at all on whether his Note has been securitized.  Because the current note-holder has violated Titles 17 and 57 of the Utah Code, Harris could not determine who had authority to negotiate a forbearance or resolution of his default.

In thousands of cases across the country, including the present case, MERS claims that it owns legal title to the mortgage and therefore is entitled to foreclose. However, an economic analysis of the claim that MERS owns the lien is demonstrably false when MERS does not own the proceeds of the sale generated from exercising the lien.

Even if this Court accepts MERS' suspect claim that it owns legal title to a mortgage, nominal ownership does permit MERS to behave as if it is the mortgagee:

> Prior to the introduction of MERS to the mortgage markets, in the history of the Anglo-American common law, there has been no case that holds that a debt collection plaintiff that lacks any beneficial interest in the debt has standing to sue *even* where legal title to that debt is held by a trustee. Nor has there ever been a case that holds there are *two* separate legal titles to the same property. . . . To grant MERS standing based on legal title held by someone else [the trustee of the security, or the actual lender/mortgagee], is to treat the notion of legal title as some magical nonsense where ownership means nothing other than a willingness on the part of the courts to let financiers seize homes however is most convenient for them.[11]

Currently, there is a growing split in authority on whether MERS, and its appointed agents like Woodall, have standing to bring foreclosure actions against homeowners. There are three general propositions which are accurate characterizations of the split in authority: first, state court appellate authority across the country has been resounding and near-unanimous in holding that MERS is not the beneficiary of any mortgage promissory note or deed of trust, despite the common language of MERS' trust deeds.[12] Second, federal

---

[11] Peterson, *Foreclosure, Subprime Mortgage Lending, and The Mortgage Electronic Registration System*, available at http://ssrn.com/abstract=1469749; *see also* Sprint Communications Co., L.P. v. APCC Services, Inc., 128 S.Ct. 2531, 2535 (2008).

[12] *See Landmark National Bank v. Kesler*, 216 P.3d 158 (Kans. 2009); *MERS, Inc. v. Southwest Homes of Ark.*, 301 S.W.3d 1 (Ark. 2009); *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619 (Mo.App. 2009), *MERS, Inc v. Nebraska Dept. of Banking and Fin.*, 704 N.W.2d 784 (Neb. 2005).

bankruptcy courts are near-unanimous in holding that MERS is not a real-party-in-interest ("beneficiary") entitled to assert a proof of claim or to move for relief from an automatic stay.[13]  Lastly, the trial court authority (often unpublished like *Rodeback*) cited by Defendants upholding MERS' agent authority as "nominee" for an original lender pursuant to the language of the trust deed are generally conclusory opinions that refuse to look beyond MERS' claims of nominal ownership.[14]

In 2009, the Arkansas Supreme Court held that "MERS is not the beneficiary, even though it is so designated in the deed of trust. Pulaski Mortgage, as the lender on the deed of trust, was the beneficiary. It receives the payments on the debt." *Mortgage Elec. Registration Sys., Inc. v. S.W. Homes of Ark.*, 301 S.W.3d 1, at 4-5 (Ark. 2009), attached as Exhibit 13.

In 2009, the Kansas Supreme Court, based on a comprehensive analysis of the trust deed and the concepts of "nominee", "beneficiary" and "mortgagee", also rejected the notion that MERS is a real party in interest to a foreclosure action.  *See Landmark v. Kesler*, 216 P.3d 158, 168 (2009), attached as Exhibit 14.

In 2009, the Missouri Court of Appeals found that MERS could not foreclose when "[t]he practical effect of splitting the deed of trust from the promissory note is to make it

---

[13] *See In re Vargas*, 396 B.R. 511 (Bankr.C.D.Cal. 2008), *In re Wilhelm*, 407 B.R. 392 (Bankr.D.Idaho 2009), *In re Walker* 10-21656-E-11 (E.D.Cal.2010) (unpublished opinion).

[14]*See, e.g., In re Sina*, 2006 WL 2729544 (Minn.App. 2006) ("Although the record shows that ALS serviced the mortgage, the assignment of the mortgage was recorded in MERS's name. And by agreement, MERS retained the power to foreclose the mortgage in its name. Because MERS is the record assignee of the mortgage, we conclude that MERS has standing to foreclose the property by advertisement.").

impossible for the holder of the note to foreclose, unless of the holder of the deed of trust is

the agent of the holder of the note . . . .   The mortgage loan becomes ineffectual when the

note holder did not also hold the deed of trust."  *See Bellistri v. Ocwen Loan Servicing, LLC*,

284 S.W.3d 619, 623 (Mo.App.2009), attached as Exhibit 15.

     The Nebraska Supreme Court has "conclude[d] that MERS does not acquire

mortgage loans" because "simply stated, MERS has no independent right to collect on any

debt because MERS itself has not extended credit, and none of the mortgage debtors owe

MERS any money." *Mortgage Elec. Registration Sys., Inc. v. Neb. Dep't of Banking & Fin.*, 704

N.W.2d 784, 788 (Neb. 2005), attached as Exhibit 16. This conclusion relied upon MERS's

arguments to that court that it "only holds legal title to members' mortgages in a nominee

capacity and is *contractually prohibited from exercising any rights with respect to the*

*mortgages (i.e., foreclosure) without the authorization of the members.*   Further, MERS

argues that it does not own the promissory notes secured by the mortgages and has no

right to the payments made on the notes." *Id.* at 787 (emphasis added).

     Additionally, numerous bankruptcy courts have also found that, because MERS

never holds the promissory note, its assignment of the deed of trust has no force.  *See In re*

*Wilhelm,* 407 B.R. 392 (Bankr.D.Idaho 2009) (standard mortgage note language does not

expressly or implicitly authorize MERS to transfer the note), attached as Exhibit 17; *In re*

*Vargas,* 396 B.R. 511, 517 (Bankr.C.D.Cal.2008) ("[I]f FHM has transferred the note, MERS is

no longer an authorized agent of the holder unless it has a separate agency contract with

the new undisclosed principal.  MERS presents no evidence as to who owns the note, or of

any authorization to act on behalf of the present owner."), attached as Exhibit 18;  *In re*

*Walker*, Case No. 10-21656-E-11 (E.D.Cal.2010) (unpublished opinion) ("to perfect the

transfer of mortgage paper as collateral the owner should physically deliver the note to the

transferee.  Without physical transfer, the sale of the note could be invalid as a fraudulent

conveyance, or as unperfected . . . .  MERS is not the owner of the underlying note and

therefore could not transfer the note, the beneficial interest in the deed of trust, or

foreclose upon the property secured by the deed."), attached as Exhibit 19.

A federal district court in Ohio dismissed 27 foreclosure cases when the lenders

could not prove they were the holder and owner of the Notes and Mortgages.  *In re*

*Foreclosure Cases*, Case No. 1:07-cv-02282-CAB (N.D.Ohio.2007) (unpublished opinion),

attached as Exhibit 20.  In the Ohio case, the foreclosing party was not referenced in the

recorded chain of title, which is identical on the facts to Harris' case.  Additionally, Ohio

law, like Utah law, makes mortgage assignments subject to recording.  *See* U.C.A §17-21 *et*

*seq*.; *see also* U.C.A. § 57-1-20.  Judge Boyko concluded that: "[n]either the fluidity of the

secondary mortgage market, nor monetary or economic considerations of the parties, nor

the convenience of the litigants supersede those obligations [to prove possession of the

endorsed notes]." *In re Foreclosure Cases*, *supra*, at p. 5.

Defendant's reliance on the recent unpublished federal trial court decisions in

*Burnett* and *Rodeback* is unpersuasive.  *See Rodeback v. Utah Financial, et al.*, Case No. 1:09-

19

cv-00134-TC (N.D.Utah.2010) and *Burnett v. Mortgage Electronic Registration Sys., Inc.*,

Case No. 1:09-cv-00069-DAK (N.D.Utah.2009), attached to Defendant's Memorandum.  In

*Burnett*, the primary focus of Judge Kimball's analysis focused on Burnett's failure to

properly plead her FDCPA claims.  In the context of evaluating whether Woodall had the

right of possession to plaintiff's property and therefore had the right to demand payment of

the debt, the court simply recited the language of the trust deed (language identical to

Harris') and concluded, without any analysis, that MERS had authority it claimed in the

deed.  *Burnett* is further distinguishable because, in that case, MERS was acting as the

*identified* nominee for the original lender.  In the present case, as the SOT, NOD and

Trustee's Deed clearly illustrate, MERS is acting *sua sponte*, as "the Beneficiary" which

"presently owns the [note] obligations secured" by the Trust Deed.  *See* SOT, NOD, and

Trustee's Deed, *supra*.

Judge Campbell's decision in *Rodeback*, decided earlier this month, is also

distinguishable from the present case.  Like *Burnett*, where the primary issue was the

pleading requirements of the FDCPA, the primary issue in *Rodeback* was whether the

defendants violated RESPA by failing to respond to a qualified written request. In the

concluding paragraph of the opinion, this Court summarily concluded, without any

analysis, that MERS had authority to foreclose based on the language in the trust deed,

which, once again, is identical to Harris'.  Therefore, *Rodeback*, at best, stands for the

proposition that MERS has "nominee" or limited agent authority to act at the instruction of

the original lender, assuming the grant of authority in the trust deed is lawful and binding upon the parties, an issue that none of this Court's MERS-related decisions have fully addressed.

Harris is an unsophisticated consumer who was presented with a large stack of documents at closing and instructed to "sign here" dozens of times, without any opportunity to fully read or understand many of the technical provisions of the documents he was asked to sign.  At no point in time did anyone discuss MERS or its relationship to his mortgage.  At all times, Harris believed he was interacted with Lehman only as his lender. Defendants have forced the MERS grant of authority upon borrowers like Harris in tens of millions of loans nationwide in an effort to shift foreclosure liability and lower transaction costs for the securitization of mortgages.  The Trust Deed's purported grant of authority as "Beneficiary" is an adhesion contract, which should be void for public policy.  At minimum, it is a unilateral mistake committed with full knowledge by Defendants who employ the MERS masquerade in their regular course of business without ever disclosing it to a borrower.

*Rodeback* and *Burnett* are precisely the types of examples that Dean Peterson refers to in his evaluation of the split in authority nationwide concerning MERS' (and therefore Woodall's) authority to foreclose.[15]  There is no decision in MERS favor, from any court, that has ruled that MERS is the "Beneficiary" or mortgagee based on an in-depth analysis of the economic behavior of the parties.  The decisions in MERS' favor do nothing more than

---

[15] *See Peterson, supra.*

recite the language of the trust deed.  To permit a party to selfishly define its role in a mortgage transaction, regardless of economic realities of the transaction, contravenes well-established principles of contract, property, and agency law.  To permit MERS to evade liability for violations of federal lending laws by accepting its claim that it is "solely nominee" for the lender on the one hand, while permitting MERS to prosecute tens of thousands of foreclosures nationwide by accepting its claim that it is the "mortgagee" or holder of the "beneficial interest" of mortgages is an affront to public policy and consumer's ability to protect themselves against the overreaching of the predatory lenders who invented MERS: "MERS represents the mortgage industry's best efforts to create a single, national foreclosure plaintiff that always has foreclosure standing, but never has foreclosure liability."[16]

MERS does not make mortgage loans.  MERS does not take payment on mortgage loans.  No homeowner every promises to pay MERS any money.  MERS does not receive the proceeds of any foreclosure sale.  MERS is not liable for the fraud or deceptive practices of the lender.  MERS is not the beneficiary of any mortgage note or security instrument.  Therefore, MERS is cannot assign, substitute trustee, declare default, or convey the beneficial interest in property through a trustee's deed.

In summary, Harris has stated a claim for relief for declaratory judgment that:

(1) The assignment of the beneficial interest to MERS in the Trust Deed is a nullity.

(2) The MERS executed and recorded SOT violates U.C.A. § 57-1-19 through § 57-1-

---

[16] *Id.*

36.

(3) The MERS/Woodall NOD violates U.C.A. § 57-1-19 through § 57-1-36.

(4) And, thus, for the same reasons, the MERS/Woodall Trustee's deed violates

U.C.A. § 57-1-19 through § 57-1-36.

Therefore, Plaintiff moves the Court to deny Defendants' Motion to Dismiss when

Plaintiff has clearly stated a claim upon which relief can be granted.

**B. Harris has properly stated, and pleaded, his claim for violations of the FDCPA.**

The federal Fair Debt Collection Practices Act ("FDCPA") forbids false or misleading

representations and unfair collection tactics, including threats to foreclose when not legally

entitled to do so.  15 U.S.C. §§ 1692d-1692f.  The FDCPA requires that debt collectors give

consumers written validation and verification of a debt as well as the identity of the

creditor in order to prevent collection of debts or fees not actually owed.  15 U.S.C. §

1692g(a).  The FDCPA grants a private right of action allowing consumers to sue for

statutory punitive damages, costs and attorney's fees.  15 U.S.C. § 1692k(1).  The FDCPA

must be construed broadly in favor of debtors, analyzed from the perspective of the "least

sophisticated debtor."[17]

MERS, and its appointed foreclosure attorneys, are third-party debt collector subject

to the FDCPA when they regularly collect, or attempt to collect, directly or indirectly, debts

---

[17]*See, e.g.,* Brown v. Card Service Center. 464 F.3d 450, 453 ("Because the FDCPA is a remedial statute, we construe its language broadly, so as to effect its purpose. Accordingly, . . . we have held that certain communications from lenders to debtors should be analyzed from the perspective of the "least sophisticated debtor.").

owed or due or asserted to be owed or due to another.  Woodall is one of about a half-dozen Utah attorneys who collectively institute the bulk of the thousands of non-judicial foreclosures that occur every year in Utah.  If the Court is not satisfied that the Complaint properly pleaded the "regularity" contention as to Woodall (despite its references to the frequency of the foreclosure activities of MERS and its appointed trustees (Plaintiff's Complaint, at ¶ 86)), Harris asks leave of the Court to do so by amendment.

By instituting foreclosure proceedings, MERS and its appointed foreclosure attorneys are "attempt[ing] to collect, [either] directly or indirectly, debts" within the meaning of the statute.[18]  The overwhelming majority of state and federal courts have concluded that bringing a foreclosure action is a debt collection activity governed by the Act.[19]

Moreover, whatever the mortgage closing documents say, because MERS, and its appointed foreclosure attorneys like Woodall, remit all proceeds of their collection activities to the actual owner of the loan, Woodall is clearly collecting a debt that is owed to another business entity.  MERS and Woodall are not creditors exempted under the statute when they do not "offer or extend credit" on any mortgage loan.  *See* 15 U.S.C. § 1692a(4).

---

[18] 15 U.S.C. § 1692a(6). The Supreme Court has held that collection lawsuits are debt collection within the FDCPA. *Hientz v. Jenkins*, 514 U.S. 291, 294 (1995).

[19]*Wilson v. Draper & Goldberg*, 443 F.3d 373 (4th Cir. 2006); *Kaltenbach v. Richards*, 464 F.3d 524 (5th Cir. 2006); *Shapiro &Meinhold v. Zartman*, 823 P.2d 120 (Colo. 1992); *Galusk v. Blumenthal*, 1994 WL 323121 (N.D.Ill. June 26, 1994). *Cf Bergs v. Hoover, Bax, &Slovacek, LL.P.*, 2003 WL 22255679 (N.D. Tex. Sept. 24, 2003).

The FDCPA contains an exemption specifically designed for mortgage servicers.  *See* 15 U.S.C. § 1692a(6)(F).[20]  However, this exemption does not apply to MERS or Woodall for two reasons: (1) MERS and trustees are not mortgage loan servicers when they do not service the debt by collecting payments due; (2) the legislative history and policy rationale behind the exemption indicates MERS and its appointed foreclosure attorneys do not qualify.  Congress exempted original creditors and loan servicers (prior to default) from the FDCPA because it felt that market forces would penalize creditors who perpetrated overbearing or harassing debt collection practices when consumers could shift their future credit purchases elsewhere; third-party debt collectors, on the other hand, are not chosen by the consumer, and therefore are not vulnerable to a market-base remedy.  Likewise, homeowners never choose to interact with MERS, or foreclosure attorneys like Woodall. Additionally, MERS' and Woodall's collection activities are focused exclusively and completely on collecting loans on the eve of foreclosure.  Therefore, because there is no market-based remedy to penalize MERS or Woodall for unfair or deceptive debt collection practices and because their collection activities are post-default, they should be considered third-party debt collectors.

---

[20] *Dawson v. Dovenmuehle Mortgage inc.*, No. 00-6171, 2002 WL 501499, at *5 ("A loan servicer, someone who services but does not own the debt, is not a 'debt collector' if the servicer begins servicing of the loan before default…."). S. Rep. No. 95-382, at 3 (1977) ( X- quote ). The Federal Trade Commission's Staff Commentary also reflects this policy by explaining that: "The exception (iii) for debts not in default when obtained applies to parties such as mortgage service companies whose business is servicing current accounts."). 53 Fed. Reg. 500097, 50103 (Dec. 13, 1988).  Senate Report No. 95-382, at 3-4(1977) ("[T]he committee does not intend the definition [of debt collector] to cover the activities of . . . mortgage service companies and others who service outstanding debts for others, so long as the debts were not in default *when taken for servicing*.") (emphasis added)

The FDCPA will be gutted if entities like MERS and its appointed foreclosure attorneys are not considered debt collectors.  If courts conclude MERS is entitled to exemption, third-party debt collection mills will inevitably circumvent the statute by instructing doctors, hospitals, landlords, credit card lenders, and others to list MERS, or some other "obligee of record in nominee capacity" in the loan or account origination documents.  These "nominees" can then hire attorneys like Woodall, who demand payments from homeowners for hundreds of thousands of dollars with only superficial verification of the alleged debt, who then escape all liability under the FDCPA.

It is for this reason that the FDCPA must be construed broadly in favor of debtors.  Mortgage servicers, like Aurora, who cloak themselves in MERS' name, should also be considered debt collectors.  MERS is a relatively small company without the resources to use its own employees to bring the hundreds of thousands of foreclosures in which it is named a party.[21]  MERS solves this problem by telling courts, and anyone else who asks, that the servicer's employee or foreclosure attorney is an employee of MERS, even though MERS does not pay that person a salary or any other compensation.[22]  Under MERS' company policy, thousands of employees of *other* companies and law firms have been

---

[21] MERS' web page lists the contact information for only five attorneys and two paralegals. MERS Departments, http://www.mersinc.org/about/departments.aspx?id=2 (viewed Sept. 5, 2009).

[22] Mortgage Electronic Registration System, Inc., MERS Law Seminar for USFN Conference, 15 (April 21, 2002) (document on file with author) ("Question :*Who should be named as a certifying officer?* [Answer:] Anyone that signs 'documents for the Lender currently should be named as a certifying officer. This way, the Lender's procedures will not need to be changed and the same people will continue to execute the documents.").

named "certifying officers" of MERS.[23]  A servicer's employee or foreclosure attorney can

become a "Vice-President" or "Assistant Secretary" of MERS by simply filling out the

"Corporate Resolution Request Form" on MERS' web page.[24]  Once a servicer's employee or

foreclosure attorney attains the fictitious "Assistant Secretary" title, she can order as many

MERS corporate seals as she wishes for a fee of $25.

In this case, Woodall claims he was substituted as trustee on the authority of "Susan

Smothers, Assistant Secretary of MERS."  *See* Substitution of Trustee, *supra*.  Susan

Smothers is most likely not a bona-fide employee of MERS, but rather is an employee of

Cal-Western Reconveyance, the foreclosure-services alter-ego of the law firm Pite Duncan

LLP.  This is fundamentally deceptive.  The FDCPA demands that courts look past the

nominal labels debt collectors give themselves and determine who is actually engaging in

what type of economic activity.  Whether Aurora is the servicer or the purported assignee

of Harris' mortgage, it should not be able to pretend to be someone else in order to start

foreclosure proceedings by authorizing Woodall to enter his appearance.  If Aurora is in

---

[23]Question and Answer document produced by MERS for a training conference explains:
　　Question: *What is a Certifying Officer?*
　　A certifying officer is an employee of the Lender who is appointed a MERS officer by a MERS Corporate
　　Resolution. The Resolution allows the certifying officer to execute documents as a MERS officer.
　　Question: *Does the title that the employee holds as an employee of the Lender correspond to the title*
　　*that the employee holds as a MERS Certifying Officer?*
　　No. All MERS Certifying Officers are appointed assistant secretaries and vice presidents of Mortgage
　　Electronic Registration Systems, Inc. That means that if an employee is a Senior Vice President of the
　　Lender, that employee is not a Senior Vice President of MERS. The employee is an assistant secretary
　　and vice president of MERS.
Mortgage Electronic Registration System, Inc., MERS Law Seminar for USFN Conference, 15 (April 21, 2002)
(document on file with Dean Peterson).
[24] MERS, Corporate Resolution Request Form, www.mersinc.org/MersProducts/forms/crrf/crrf.aspx (last viewed:
April 6, 2009).

fact the assignee of Harris' mortgage, it should have, in compliance with Utah law, recorded

that assignment and then properly substituted in Woodall pursuant to its own lawful

authority under Title 57.  Instead, Aurora hides behind the mask of MERS to start

foreclosure proceedings, confusing and deceiving homeowners like Harris who don't know

where to turn to cure a default or negotiate a forbearance.  Dean Peterson appropriately

describes MERS as the "masked executioner."[25]

Susan Smother's MERS masquerade is *per se* deceptive, and Woodall is complicit in

her deception.  Debt collectors who pretend to send letters from an attorney, where an

attorney has not actually reviewed the file in question, have committed a deceptive act

under the statute.  *Clomon v. Jackson*, 988 F.2d 1314 (2d.Cir. 1993).  Similarly, third-party

debt collectors cannot exempt themselves from the statute by pretending to be the

creditor.  15 U.S.C. § 1692e(11).  And when a creditor pretends to be a third-party debt

collector, they lose their exemption under the statute.[26] The thousands of MERS' "Vice-

Presidents" and "Assistant Secretaries" and the foreclosure attorneys, like Woodall, who

purport to act on MERS' behalf, are in-fact third party debt collectors masquerading as

agents of the original creditor.

The prophylactic purposes of the FDCPA will be defeated by the MERS' rationale,

whereby any original creditor can set up a "corporate resolution" form on its web site,

---

[25] *See Peterson, supra.*

[26] 15 U.S.C. § 1692a(6) ("The term 'debt collector' . . . includes any creditor who, in the process of collecting his own debts, uses any name other than his own which would indicate that a third person is collecting or attempting to collect such debts, such term includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests.").

enabling third-party debt collectors to fictitiously assign themselves officious titles with the creditor.  From the perspective of the least-sophisticated consumer, especially in the case of a homeowner facing foreclosure, the representation that an "Assistant Secretary" of an official-sounding organization like MERS is instituting foreclosure proceedings is misleading and deceptive.  The homeowner does not know with whom he or she should attempt to negotiate a settlement, or where he or she should go to obtain information on the amount due.  The homeowner has no way to distinguish between the MERS "Assistant Secretary" making foreclosure threats on his home and the myriad other mortgage-rescue schemers and charlatans who prey on the vulnerable in the present housing market downturn.

The representation that Susan Smothers is an employee of MERS is false when the economic reality of the interaction indicates otherwise: the "employee" is not selected through any hiring process and is not paid any salary or compensation.  At minimum, the representation that Susan Smothers is an employee of MERS is misleading when the least-sophisticated consumer is likely to believe that a company other than the lender has intervened to prosecute the foreclosure when, in fact, no such thing has occurred.

Furthermore, for Woodall to claim in his NOD that MERS "has executed and delivered to said Trustee a written declaration of default and a demand for sale, *and **has deposited** with said Trustee such deed and **all documents evidencing the obligation secured thereby***" (emphasis added) is misleading, and most likely false, as will be

determined at trial.  Harris claims that MERS does not have his Note, endorsed by Lehman

or in blank.  If MERS does not have it, it was not delivered to Woodall, as he claims.  Thus he

is unlawfully attempting to collect a debt pursuant to the FDCPA.

Even if this Court decides that Woodall is not a debt collector in his capacity as a

trustee for a secured mortgage obligation, he is a debt collector under the FDCPA when he

purports to act on the authority of Susan Smothers and MERS, when he knows, or should

have known, that she is not in fact a MERS employee and/or that MERS had no agency

relationship with the true holder of Harris' note at the time Woodall recorded the NOD.

If Defendants can prove at trial that they have fully complied with the requirements

of Title 57, Harris stipulates that his claim to violations of the FDCPA fails as a matter of

law.  However, as more fully developed *supra*, Harris has stated a claim that Woodall's

appointment as trustee was unlawful and therefore his notice of default and subsequent

sale of Harris' property through the trustee's sale are unlawful.  Contrary to Woodall's

assertion in his brief that "Plaintiff does not allege that Woodall did anything outside of his

role as trustee under the Deed of Trust" (at p. 5), Harris claims that Woodall acted without

authority, that he was not in fact the trustee appointed in accordance with Title 57, and

that he therefore was illegally demanding payment on a Note he had no claim to and that he

unlawfully foreclosed upon the property.  *See* Complaint at ¶¶ 53-54, 56-61.

The NOD recorded by Woodall violates Title 57.  A substitution of trustee must "be

executed and acknowledged by all of the beneficiaries under the trust deed or their

successors in interest." *Id.* If Woodall is acting at the behest of Aurora (or any other lender

by assignment), his SOT is *per se* illegal because of its failure to include the required

acknowledgment(s). At minimum, the SOT is not executed and acknowledged by Lehman

or by the purchasers of Lehman's assets in bankruptcy.

Defendants' claim that trustees are not debt collectors under the FDCPA by citing

*Burnett. See Burnett, supra.* Once again, their reliance on *Burnett* is unpersuasive. The

FDCPA claims in *Burnett* were dismissed by Judge Kimball because the plaintiff "merely

parrots the language of the [FDCPA] statute and does not meet the pleading standards

under *Bell Atlantic v. Twombly*, 127 S.Ct. 1955 (2007)." *Burnett,* at p. 5. Because Burnett

failed to allege specific acts of debt collection beyond "parroting the language" of the

statute, her claim was dismissed. Woodall once again misleads the Court in his brief when

he claims, "Plaintiff does not even allege that Woodall meets the definition of a "debt

collector" under 15 U.S.C. § 1691(a)(6)." Defendants Memorandum, at pp. 5-6. Harris'

Complaint alleges that "[t]hese thousands of MERS' "Vice-Presidents" and the[ir]

foreclosure attorneys, like the Trustee in this case, who purport to act on MERS' behalf, are

in-fact third party debt collectors masquerading as agents of the original creditor." *Id.* at ¶

86.

Additionally, § 1691(a)(6) does not provide the only statutory definition for a "debt

collector:" "The term 'debt collector' . . . includes any creditor who, in the process of

collecting his own debts, uses any name other than his own which would indicate that a

third person is collecting or attempting to collect such debts, such term includes any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the enforcement of security interests."  15 U.S.C. § 1692a(6).

Harris' Complaint does not merely parrot the statute.  In his 30 paragraph, six-page FDCPA Cause of Action, Harris makes numerous, specific, factual allegations as to how MERS and Woodall are "debt collectors" acting in "connection with the collection of a debt." Additionally, the Complaint recites a variety of case law for the proposition that post-default foreclosure activities are debt collection activities within the meaning of the FDCPA. Moreover, based on this Court's determination as to whether MERS is indeed the holder of the "beneficial interest" in Harris' mortgage and/or whether MERS was acting on behalf of the true note-holder, Woodall's appointment as trustee is invalid, his demand for payment under the mortgage is an attempt to collect a debt that is not due (to him), and the foreclosure sale he conducted is illegal.  *Burnett* stands for the proposition, at best (because it is *dicta*), that a trustee who, without any deception as to his identity or authority, prosecutes a "non-judicial foreclosure does not act 'in connection with the collection of [a] debt' when that trustee limits his or her conduct to the statutory requisites governing non-judicial foreclosure."  *Id.* at p. 6.

Furthermore, Title 57 supports Harris' demand that Woodall and/or MERS produce the "blue-ink" note verifying and validating both the identity of the true note-holder and

the amount of the debt.  Woodall's NOD declares that MERS has delivered to him "all documents evidencing the obligation secured thereby."  Thus, it should be no great inconvenience for Woodall to produce the Note as requested by Harris, given that it is the primary document "evidencing the obligation."

In sum, Harris has stated a claim for violations of the FDCPA by MERS, Woodall and any unidentified lender who is instructing Woodall to act, when his appointment by MERS was unlawful because MERS is not the beneficiary of the Trust Deed or, by assignment or otherwise, and therefore lacked authority to appoint a substitute trustee under Utah law. Furthermore, Defendants have violated the FDCPA by using "deceptive forms" which mask the true identity of the creditor to whom the debt was owed.  As a result of Defendants' violations of Title 57 and the FDCPA, Harris was confused, pacified, unable to identify the party with whom he could negotiate any forbearance, and he therefore lost his home.

Plaintiff therefore respectfully moves this Court to deny Defendants' motion to dismiss.

Dated this 8th day of October 2010.

*Abraham Bates*

_____
Abraham Bates
Counsel for Plaintiff

33

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing AMENDED MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was served upon the following parties by ECF Electronic Transmission on the 8th day of October, as follows:

| | |
|---|---|
| Peter J. Salmon<br>Attorney for James Woodall<br>PITE DUNCAN, LLP<br>4375 Jutland Dr., Ste 200<br>P.O. Box 17935 | Philip K. Dracht<br>FABIAN & CLENDENIN<br>215 South State St., Ste 1200<br>SLC, UT 84111-2323 |

*Abraham Bates*
_____
Abraham Bates