Abraham Bates (12440)
**WASATCH ADVOCATES LLC**
4525 Wasatch Blvd. Ste 300
Salt Lake City, Utah 84124
Telephone: (801) 662-0077
Facsimile: (801) 662-0082
abe@slclawfirm.com

Attorney for Plaintiff

### IN THE UNITED STATES DISTRICT COURT
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| RICHARD W. HARRIS,<br><br>    Plaintiff,<br><br>vs.<br><br>LEHMAN BROTHERS BANK; MORTGAGE ELECTRONIC REGISTRATION SYSTEM; ITS TITLE INSURANCE SERVICES LLC; AURORA LOAN SERVICES, LLC; JAMES H. WOODALL; CAL-WESTERN RECONVEYANCE CORP.; BANK OF AMERICA, N.A.; & DOEs 1-5,<br><br>    Defendants. | **PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S 12(B)(6) MOTION TO DISMISS**<br><br><br>Case No. 2:10cv00690<br><br><br>Judge: Campbell |

Plaintiff Richard W. Harris ("Harris") respectfully submits the following Memorandum of Points and Authorities in Opposition to Defendants' Lehman Brothers Bank FSB ("Lehman"), Aurora Loan Services, LLC ("Aurora") and Mortgage Electronic Registration Systems, Inc. ("MERS") Motion to Dismiss Plaintiff's Amended Complaint.

**SUMMARY OF DEFENDANT'S ARGUMENT**

Defendants begin by attacking Plaintiff's Amended Complaint under the guise of "if you don't have the law, argue the facts, and if you don't have the facts, attack your opponent," and that Plaintiff's original and amended Complaints and the November 4, 2010 Request for Judicial Notice are "irrelevant" and "do not apply to this case." *See* Defendant's Memorandum, at p. 1-2.

Defendants then make three arguments in support of their revised Motion to Dismiss: (1) MERS is "*a* beneficiary under the trust deed" and is "able to *enforce the terms of the Note* and Trust Deed; and (2) non-judicial foreclosure is a contract-right and thus Plaintiff's "wrong beneficiary" argument is irrelevant; (3) the FDCPA does not apply.

Plaintiff will address the first two arguments and but will not address the third, as the Amended Complaint redacts the FDCPA cause of action of thus the issue is moot.

**ARGUMENT**

**I.   MERS is not *the* Beneficiary of Harris's Trust Deed and has absolutely no ability to enforce, or to even claim enforcement, of the underlying mortgage promissory Note.**

The privilege of non-judicial foreclosure permits a secured party to foreclose the beneficial interest in a mortgage deed outside of the scrutiny and supervision of the court system as long as that party complies with the strict requirements of the state's non-judicial foreclosure statute, U.C.A. §§ 57-1-19 - § 57-1-38. *See* Preliminary Injunction Memorandum and Order, Case No. 1009163364-UT (Nov. 1, 2010) (unpublished decision),

attached as Exhibit 1. While this Court may certainly interpret the state non-judicial foreclosure statute to evaluate whether Plaintiff has stated a claim upon which relief can be granted, the Court should be persuaded, at least under the minimum-threshold Rule 12(b)(6) standard, that Plaintiff has stated a claim upon which relief can be granted when a state court, interpreting the state's non-judicial foreclosure statute, not only held that the homeowner's claim for declaratory judgment stated a claim upon which relief could be granted but that "Plaintiff's claim for declaratory judgment that Defendants MERS, [and the successors in interest by substitution/assignment from MERS], lack proper authority, pursuant to U.C.A. §§ 57-1-19 -- § 57-1-38 present serious issues on the merits which should be the subject of further litigation." *See id*.

Furthermore, the Third District Court concluded that "the injunction is not adverse to the public interest when the home-owning public is protected by strict enforcement of Utah's non-judicial foreclosure statute . . . which requires that only the *beneficiary of record* to a trust deed may exercise the power of non-judicial power of sale (emphasis supplied). See *id*. This holding legitimates Plaintiff's claim against MERS and Aurora when the Assignment of the beneficial interest in the Trust Deed was neither *executed* nor *recorded* until weeks after the Trustee's Deed which purportedly terminated Plaintiff's interest in the Property.

   II.   **Non-Judicial Foreclosure is not a purely-contractual right, as alleged by Defendants, but is governed by Utah's Trust Deed Statute, which clearly defines the rights, roles and responsibilities of the secured parties to the non-judicial foreclosure procedure.**

As Defendants admit in their Memorandum, U.C.A. § 57-1-19 defines "Beneficiary" as "*the* person named or otherwise designated in a trust deed as the person for whose benefit a trust deed is given, or his successor in interest (emphasis supplied)." *See id* at p.2. According to the plain language of the statutory definition, "Beneficiary" is *singular*, it is *the* person named . . . for whose benefit a trust deed is given. Additionally, under Title 57's provision for reconveying a trust deed, a "'[b]enficiary' means **the record owner** of the beneficiary's interest under a trust deed, including successors in interest (emphasis supplied). *See id*. at § 57-1-39 (2006). Lastly, the same provision defines a "[m]ortgagee" as "**the record owner** of the mortgagee's interest under a mortgage, including a successor in interest (emphasis supplied). *See id.*

The public policy underlying the exercise of the privilege of non-judicial foreclosure is contravened when the chain of title to real property is obfuscated by multiple parties making ambiguous, arbitrary and contradictory claims to the same interest in real property. Plaintiff's Trust Deed consistently refers to the secured rights of the Lender (Lehman) in the Property, and both the non-judicial foreclosure statute and the Trust Deed permit only the Lender the power to substitute trustee, for example. The case at bar is a perfect example of the transparency required by the system of public records maintained by an elected County Recorder before the non-judicial foreclosure privilege can be exercised, when Plaintiff's original Lender Lehman failed under the weight of its predatory sub-prime lending portfolio prior to the institution of the foreclosure proceedings. As

alleged in the Complaint, Lehman sold off its various assets through bankruptcy.  Then on August 14, 2009, Cal-Western Reconveyance, a foreign foreclosure process servicing company executed and recorded documents in MERS' name as **Beneficiary,** *not nominee, not legal title holder, nor in any other limited agent capacity for Lehman or its successor(s) in interest*.  *See* SOT, NOD, Assignment and Trustee's Deed, attached as Exhibits 2-5.

While MERS may, *arguendo*, be permitted to act in a limited nominee/agent capacity at the specific instruction of an original Lender, it may not fully supplant a bankrupt/dissolved/non-existent Lender and prosecute a foreclosure in its own name, as it has done in Plaintiff's case.  All the recorded documents abstracted to the title of Plaintiff's Property claim MERS is "the Beneficiary."  *See* SOT, NOD, Assignment and Trustee's Deed, *supra*.

The Notice of Default is the clearest indication of the illegality of Defendants' exercise of the privilege of non-judicial foreclosure when it claims "the beneficial interest under such Deed of Trust **and the obligations secured thereby** are presently owned by MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. (emphasis supplied)."  *Id.*  MERS Membership Rules unequivocally preclude any MERS' Member from every claiming any ownership interest in the underlying debt obligation, the mortgage promissory note. *See* MERS Membership Rules June 2009, at p. 26 ("The Member shall not plead MERS as the note-owner in any foreclosure document") available at http://www.mersinc.org/MersProducts/manuals.aspx?mpid=4 last accessed on 11/28/10.

Not only do MERS' own membership rules preclude note-ownership claims as in the present case, but MERS itself admits it is not the beneficiary to any trust deed: in a September 2009 deposition, MERSCORP, Inc. (the parent-company of MERS) President R.K. Arnold admitted that his company does not have a beneficial interest in any mortgage; that it does not loan money; and that it does not suffer a default if a borrower fails to repay a mortgage loan.[1]

Plaintiff's Request for Judicial Notice that the nation's largest mortgage lending institutions have admitted to falsely claiming, under oath, in tens of thousands of foreclosure proceedings across the country, that they physically possess the negotiable instrument entitling them to exercise the security interest in a mortgage trust deed or lien presents a prima facie case in support of Plaintiff's claim that the foreclosure-related documents recorded and abstracted to the title of his Property should be suspect given Lehman's bankruptcy and given MERS' *sua sponte* efforts to foreclose in its own name.

Defendants argue that Plaintiff consented to any and all actions taken by MERS on behalf on the Lender when the adhesive and contradictory language of the Trust Deed declares that "'**MERS**" is the Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as nominee for Lender and Lender's successors and assigns.  **MERS is the beneficiary under this security instrument** (emphasis original)." *See* Trust Deed, attached as Exhibit 6.  The term "nominee" is nowhere defined

---

[1]*See* Video Deposition of R.K. Arnold, *Henderson v. MERSCORP, Inc*., Civil Action No. CV-08-900805 (Ala. Cir. Sept. 25 2009) available at http://www.stopforeclosurefraud.com/2010/05/29/full-deposition-of-mortgage-electronic-registration-systems-mers-president-ceo-r-k-arnold-merscorp/).

within the Trust Deed, while every other key term is defined (eg. Security Instrument, Borrower, Lender, Trustee, Note, Property, Loan, Riders, etc.). See *id*, at Definitions.

Not only does MERS make the simultaneous and schizophrenic claim to be the agent ("nominee") and principal ("beneficiary") of the same secured interest in Harris' Property, but it then shifts position once again in ¶ R of the Trust Deed by claiming to hold legal title to the Property: "Borrower understands and agrees that MERS holds legal title only to the interests granted by Borrower in this security instrument, but, if necessary to comply with law or custom, MERS (as nominee . . .) has the right to [exercise any and all interests to foreclose and sell the property]. *See id.*

MERS cannot possibly hold legal title to the Trust Property at the time of the execution of the Trust Deed because, as the Trust Deed clearly indicates, legal title is held by the Trustee, ITS Title. *See id*. at ¶ (D); *see also* U.C.A. § 57-1-20 ("[a]ll right, title, interest and claim in and to the trust property acquired by the trustor . . . shall inure to the trustee as security for the obligation"); *see also* Trust Deed, *supra* at ¶ R ("Borrower irrevocably grants, conveys and warrants to Trustee, in trust, with power of sale, the following described property . . .").

Defendants like Aurora, Lehman and Bank of America invented MERS in order to lower transaction costs for the bundling and pooling of mortgage-backed assets into collateralized-debt-obligations (CDO's). These securitization parties did so in contravention of hundreds of years of law and tradition, beginning in 1636 when the

Plymouth Bay Colony enacted its first Recording Act, requiring that "all sales exchanges fites of mortgages leases or other Conveyances or howses and lands the sale to be acknowledged before the Governor or any one of the Assistants and committed to the public record.[2]  When sub-prime lending became popularized in the late 1990s, the nation's large mortgage lending institutions established MERS to facilitate the securitization of subprime mortgages, creating a conduit for structured predatory finance which devastated, in just a few years, the democratic tradition of a transparent system of public records for ownership in real property.  As a result, homeowners like Harris cannot know who in fact owns their mortgage or with whom he or she should negotiate a forbearance or modification.  Not only is a homeowner's ability to mitigate damages or to request and/or receive modification and forbearance intentionally circumvented by the MERS masquerade, but there is a real possibility of double-recovery against borrowers like Harris, as the facts of the Amended Complaint clearly demonstrate: As of October 15, 2010, MERSCorp's Servicer ID systems declares that Aurora is merely the "Servicer" of Harris' loan and the "Bank of America, N.A." ("BAC") is the purported "investor" which presumably owns his mortgage as trustee/certificate holder for a CDO.  *See* MERS Loan ID, attached as Exhibit 7.

Since 2007 when the housing market began to decline and many of MERS' original founding members failed, dissolved or entered bankruptcy, 6.6 million foreclosures have

---

[2] Christopher Peterson, "Foreclosure, Subprime Mortgage Lending, and the Mortgage Electronic Registration System," available at http://www.abanet.org/dch/committee.cfm?com=RP279000 last accessed 11/28/10.

been initiated.³  However, Goldman Sachs estimates that up to 12 million foreclosures will be commenced within the next five years, largely because more than half of all subprime mortgages originated since 2006 will end in foreclosure.  One of the most remarkable facts about the sub-prime lending movement pushed by the nation's largest banks and Wall Street brokerage houses is that it was undisputedly predatory: 61% of borrowers who received subprime loans in 2006 qualified for prime loans with better and more affordable credit terms.⁴  For the judicial system and the home-owning public at large, the most troubling foundational element of the continuing nationwide foreclosure crisis is that approximately 60% of the nation's residential mortgages or "owned" and tracked in MERS' private database, and according to MERSCorp CEO R.K. Arnold, MERS' stated goal is to "capture every mortgage loan in the country."⁵

    Federal trial courts in this state have been understandably hesitant to grant relief to homeowners who find themselves have difficulty making their mortgage payments based on the defense of simple allegations of MERS's involvement in a non-judicial foreclosure proceeding.  Many of this Court's decisions granting mortgage-lending Defendants' Motions to Dismiss have been prosecuted by *pro se* Complainants, or have been poorly plead by attorneys and firms who have created a cottage-industry of submitting cut-and-paste MERS/Securitization Complaints which are devoid of either the specific factual detail of the

---

³ *See id.*
⁴ *See id.*
⁵ *See id.*

borrower's transaction or the foreclosure-related documents abstracted to title in reference to the requirements of the non-judicial foreclosure statute.

Harris' Amended Complaint is not devoid of the requisite factual detail and he has stated a claim for relief not only on the basis of Judge Toomey's recent persuasive state-court interpretation of the Trust Deed statute, but based also in reliance, as developed in the Amended Complaint, on the in-depth appellate analyses performed by the state Supreme Courts of Maine, Nebraska, Kansas, and Arkansas, in addition to an appellate court decision in Missouri.[6]

Therefore, Harris respectfully requests that this Court deny Defendants' Motion to Dismiss his Amended Complaint when the plain language of Utah's non-judicial foreclosure statute and a recent persuasive interpretation of the law provide a basis upon which declaratory relief can be granted.

Dated this 29th day of November 2010

*Abraham Bates*

_____

Abraham Bates
Counsel for Plaintiff

---

[6] *See Landmark National Bank v. Kesler*, 216 P.3d 158 (Neb. 2009); *Mortgage Electronic Registration Systems, Inc. v. Southwest Homes of Arkansas, Inc.*, 301 S.W.3d 1 (Ark. 2009); *Bellistri v. Ocwen Loan Servicing*, 284 S.W.3d 619 (Missouri 2009); *Mortgage Electronic Registration Systems, Inc. v. Neb. Dept. of Banking and Fin.*, 704 N.W.2d 784 (Neb. 2005); *Mortgage Electronic Registration Systems, Inc. v. Saunders*, 2 A.3d 289 (Maine 2010).

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS was served upon the following parties by ECF Electronic Transmission, on the 29th of November, as follows:

| | |
|---|---|
| Philip K. Dracht<br>Counsel for Lehman, Aurora and MERS<br>FABIAN & CLENDENIN, P.C.<br>215 South State, Ste. 1200<br>Salt Lake City, Utah 84111<br>Email: pdracht@fabianlaw.com | Peter J. Salmon<br>Attorney for James Woodall<br>PITE DUNCAN, LLP<br>4375 Jutland Dr., Ste 200<br>P.O. Box 17935 |

*Abraham Bates*
_____
Abraham Bates